UNITED STATES of America

v.

Robert SHELTON.

Crim. A. No. 825-62.

United States District Court
District of Columbia.

Dec. 19, 1962.

William Hitz, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Joseph L. Rauh, Jr., John Silard, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

On May 21, 1962, the defendant's conviction of contempt of Congress, 2 U.S.C. § 192, was reversed by the Supreme Court, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), sub nom. Russell v. United States, on the ground that his original indictment in May, 1956, was fatally defective because it failed to identify the subject under congressional subcommittee inquiry at the time the witness was interrogated. That Court held that an indictment for contempt of Congress must contain such an averment. 369 U.S. at 754–755, 82 S.Ct. at 1041–1042. On October 1, 1962, the defendant was reindicted for the same offense. This time the indictment identified the subject under inquiry as "Communist activities in news media."

The defendant has moved under Rule 12(b) (2), Fed.R.Crim.P. to dismiss this new indictment on three grounds:

1. Proceedings under the new indictment would deny defendant's constitutional right to a speedy trial.

2. The indictment fails to show the subcommittee's specific authority to investigate the alleged subject under inquiry.

3. The United States Attorney had not received a contempt citation certified under the seal of a then-existing Senate by a then-incumbent president thereof at the time the defendant's alleged contempt was presented to the grand jury during September, 1962.

Each of these grounds for dismissal will be examined separately.

*I. Speedy trial.*

The defendant contends that his constitutional right to a speedy trial would

be violated if he were to be tried under this new indictment, because "the six years which have elapsed since defendant's first indictment (and the almost seven years since the alleged commission of the offense) are in the particular circumstances here presented too long a delay to permit defendant's trial at this time." The "particular circumstances" on which the defendant relies to support his contention are, first, that the Government "consciously and erroneously" chose the form of the first indictment, and second, that witnesses who were unnecessary under the wording of the first indictment but who are allegedly indispensable under the wording of the second indictment are now unable to testify in court.

The Sixth Amendment to the Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial * * *." The Supreme Court has construed these words to permit some delays, and to forbid others. "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905). "Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. [Citations omitted.] The delay must not be *purposeful or oppressive."* Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393 (1957). (Emphasis added.)

██ Cases in this circuit both before and after Pollard, supra, amplify the standards to be used by courts in deciding whether a particular delay is, in the Supreme Court's words, "purposeful or oppressive." "The essential inquiries are whether there was *unnecessary delay* in bringing about the new trial and whether the accused could now have a *fair* trial." United States v. Gunther, 104 U.S.App.D.C. 16, 17, 259 F.2d 173, 174 (1958). (Emphasis added). Where there has been a "substantial" or "extraordinary delay," the Gov-

ernment, to sustain its right to try the accused, "must show * * * that the accused suffered *no serious prejudice* beyond that which ensued from the ordinary and inevitable delay [attributable to the processes of justice]." Williams v. United States, 102 U.S.App.D.C. 51, 53–54, 250 F.2d 19, 21 (1957). (Emphasis added.) One judge in Williams, supra, would have gone further to hold that where there is "more delay than is reasonably attributable to the ordinary processes of justice," that fact alone should prevent trial, regardless of whether the defendant was prejudiced by the delay. 102 U.S.App.D.C. at 53–54, 250 F.2d at 21. A "long lapse of time" which "seriously * * * handicapped the preparation of a defense" entitles the defendant to have an indictment dismissed, Taylor v. United States, 99 U.S.App.D.C. 183, 186, 238 F.2d 259, 262 (1956). Accord, United States v. McWilliams, 82 U.S.App.D.C. 259, 163 F.2d 695 (1947). But if the delay was caused by an error made by the defendant himself which required time "to extricate himself" from that error, then the defendant cannot complain about the delay. Dandridge v. United States, 105 U.S.App.D.C. 157, 158, 265 F.2d 349 (1959).

██ These cases establish that the lapse of time alone is not sufficient to deprive a defendant of his constitutional right to a speedy trial. There must be, in addition, either unnecessary delay caused by the Government or the courts, or prejudice to the defendant, or both. In this case, there is neither. The delay of six years is wholly attributable to the ordinary and necessary processes of justice; and there is no prejudice to the defendant. Thus in this case the delay is neither "purposeful" nor "oppressive." Pollard, supra, 352 U.S. at 361, 77 S.Ct. at 485.

The delay between the first indictment and the forthcoming trial of this case under an indictment which meets constitutional requirements of specificity is wholly attributable to the ordinary and necessary processes of justice. The defendant makes no contention that there

was any unnecessary delay between the alleged offense, January 6, 1956, and the first indictment, May 26, 1956. Nor does the defendant assert that there was any unnecessary delay between that indictment and his trial, conviction, and sentence in January, 1957. Nor does the defendant claim that any of the appellate procedures—several of them postponed at the specific request of the defendant—took an undue amount of time, since it is abundantly clear that the period from January, 1957, to the Supreme Court's opinion in May, 1962, was wholly consumed by the time required for thorough appellate review. It was the defendant who sought such appellate review, both by the Court of Appeals and —when that court held in the Government's favor—by the Supreme Court. The defendant does not complain—as indeed he could not—of the time required for such review. And finally, the defendant does not claim that there was any delay between the Supreme Court's decision in May, 1962, and his reindictment on October 1, 1962. Thus the defendant concedes that as far as the judicial process is concerned, the time which elapsed between the first and second indictments was wholly attributable to the ordinary and necessary processes of justice.

The defendant's whole argument rests upon the assertion that the Government's choice of wording in that first indictment is the cause of all the later delay, and that this delay was unnecessary because the initial choice was unnecessary. In other words, the defendant argues that because the Government could have originally specified in the indictment the subject under inquiry by the Congressional committee, the Government's failure so to do makes all the time between that indictment and the new indictment "chargeable" to the Government.

This Court does not consider the Government's choice of wording in the first

indictment either willful or negligent or "purposeful," and it is open to serious question whether the Government made a "choice" at all. Under the law as it then clearly existed in the District of Columbia, the wording of the indictment was completely proper; such wording was not declared improper until the Supreme Court decided this very case, sub nom. Russell, supra. That the wording of the first indictment reflected the then-current rule in the District of Columbia was emphasized by the Supreme Court itself when that Court changed the rule, both in the majority opinion, 369 U.S. at 754, 82 S.Ct. at 1041, n. 7, and in the dissent, 369 U.S. at 782, 82 S.Ct. at 1057, n. 2. Moreover, if this then-current rule did permit the Government any choice in the matter, it would have been proper for the Government to resolve the choice in favor of simplicity—i. e., in favor of omitting an allegation of the specific subject under inquiry—under the simplified rules of criminal procedure.[1] Thus this Court finds no fault on the part of the Government in its choice of wording in the first indictment.

In reaching this conclusion, this Court is not unmindful of the defendant's argument that the Government need not be found to have exercised its choice in bad faith in order for the speedy trial argument to have validity. Nor is the Court unmindful of Petition of Provoo, 17 F.R.D. 183 (D.Md.1955), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955), where the trial court did not require a showing of bad faith and found merely that the Government had made "a deliberate choice for a supposed advantage, which caused as much oppressive delay and damage to the defendant as it would have caused if it had been made in bad faith." 17 F.R.D. at 202. What that court meant by "a deliberate choice," however, shows the complete irrelevance of that case to the one now under consideration. In Provoo the

1. "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement." Rule 7(c), Fed. R.Crim.P.

Government made an erroneous choice of venue which was unsupported in prior case law and which was exercised in order to have the trial in a supposedly more favorable (to the Government) jurisdiction. Thus the court in Provoo stated that the Government "must have known that venue in [the place initially chosen] was at least doubtful, in view of [an earlier decision of the Supreme Court]," 17 F.R.D. at 195, and held that "where the government chooses to proceed in a certain district in a doubtful case of venue, when venue in another district is clear, the government must be held responsible for the effects of its election." 17 F.R.D. at 201–202. Moreover, the court in Provoo made findings of fact which included the following quotation from a lengthy conversation between two Government officials regarding the question of venue: "We do not want that [possible venue] because it is an undesirable place for us to proceed in cases [involving this offense]. We do not get cooperation from the U. S. Attorney or the District Judge." 17 F.R.D. at 190. Thus in Provoo there was indeed a "deliberate choice" exercised, as the court said, "for a supposed advantage." That deliberate choice amounted to chicanery, if not to outright bad faith. Here, by contrast, there is not the slightest hint of bad faith, chicanery, negligence, or any other degree of fault on the part of the Government. It is not even clear that a "choice" was made at all. The Government simply followed the law as it then existed. The change in that law is to the advantage of the defendant. Thus the defendant's argument based upon Provoo is unpersuasive as applied to this case, and this Court is firmly convinced that there was no delay which could have been reasonably avoided by the Government. Thus this Court concludes that the delay was not "purposeful."

Nor does this Court find that a trial at the present time would be "oppressive." The prejudice asserted by the defendant is that the late Senator Hennings, a member of the subcommittee before which this defendant appeared, could have been called to give oral testimony on the issue of whether—as the Government has now alleged—the subject under inquiry by the subcommittee was "Communist activities in news media," and that Senator Hennings' absence because of death is attributable to the period of delay, since he was alive at the time of the first trial.

It is this Court's opinion, however, that the effect upon the defendant of Senator Hennings' absence can be completely neutralized by a ruling which would bar all oral testimony by all witnesses on the question of the subcommittee's "subject under inquiry." The Government has conceded that under the Supreme Court's ruling in this case, the burden is upon the Government to prove the alleged subject under inquiry as one of the essential elements of the Government's case, but the Government has also stipulated to the Court that it does not intend to offer oral testimony on this issue.[2] Since the Government's burden on this essential element, as upon all others, is proof beyond a reasonable doubt, it is hard for this Court to see how the defendant can fail to be helped by a ruling which would require that this issue be proved from printed documents—mainly the transcript of subcommittee proceedings—alone. On the one hand, if the written records are unambiguous, then familiar principles of law would forbid the Court to permit oral testimony to contradict those records. On the other hand, if the written rec-

---

**2.** The defendant concedes that oral testimony would be inappropriate to determine whether the alleged subject under inquiry was made known to the defendant at the time of his appearance before the subcommittee, as Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L. Ed.2d 1273 (1957), requires. Only the written transcript of the subcommittee hearings would be relevant to determine that issue. It is my opinion that such written transcript is similarly the most appropriate evidence to determine whether the alleged subject under inquiry was, in truth, the subject which the subcommittee was investigating.

ords are ambiguous, any ambiguities would have to be resolved in favor of the defendant since an ambiguity on this issue might well create a reasonable doubt concerning the subject under inquiry.[3] Thus it appears to me that the unavailability of Senator Hennings because of death would in no way prejudice the defendant's case.

Of course, at this juncture this Court cannot rule finally on the admissibility of evidence at a trial which has not even begun. Should it appear to the trial court that Senator Hennings' testimony would be competent and material, and should it further appear that the absence of such testimony would seriously prejudice the defendant, then the defendant could at that time renew his motion to dismiss on the ground that his constitutional right to a speedy trial was then being violated. This Court is not suggesting how it would decide that issue if it were to arise. The Court is merely deciding that a finding of prejudice at this time would be premature, because there is no prejudice shown in the facts before it.

Therefore, because the Government was not at fault in its choice of wording on the first indictment, and because the defendant is not prejudiced by the lapse of time between trial under the first indictment and trial under the second indictment, the defendant's contention that trial now would violate his constitutional right to a speedy trial will be rejected. The Court, however, grants the defendant leave to renew said ground for said motion at the time of trial if prejudice resulting from the absence of witnesses because of delay in trial should appear on the record adduced at said trial.

## II. Subcommittee authority.

■ As a second ground for his motion to dismiss the indictment, the defendant contends that the indictment fails to specify any resolution or action of the United States Senate or of the Senate Committee on the Judiciary which authorized the Internal Security Subcommittee to conduct the investigation alleged in the indictment.

Since the indictment does specify certain Senate Resolutions, as alleged grounds for the investigation of "Communist activities in news media," the question whether these specified resolutions do in fact authorize the alleged subcommittee investigation would be more appropriately answered at the trial, where there will be opportunity for full consideration of the resolutions and the subcommittee's authority. Thus this Court concludes that this issue cannot be determined from the indictment alone, and therefore defers the issue for determination at the trial. Rule 12(b) (4), Fed.R.Crim.P.

## III. Contemporaneous Senate seal.

■ As a third ground for his motion to dismiss the indictment, the defendant contends that the United States Attorney had not received a contempt citation certified under the seal of a then-existing Senate by a then-incumbent president thereof at the time the defendant's alleged contempt was presented to the grand jury in 1962. In other words, while the defendant does not deny that such seal was present when the first indictment was returned in 1956, thus complying with 2 U.S.C. § 194, the defendant contends that a new seal, signifying a renewed certification of the fact that the witness refused to answer certain ques-

3. *Compare* Douglas, J., concurring in Russell, supra: "The investigation was concededly an investigation of the press. This was clearly brought out by the record in Shelton * * *." 369 U.S. at 773, 82 S.Ct. at 1052; *with* Assistant United States Attorney Hitz: "As to the second asking [of the bill of particulars], the Government contends, and the indictment states, that the inquiry being conducted was pursuant to this resolution. We do not feel, and it is not the case, that there was any smaller, more limited inquiry being conducted. This committee was conducting the inquiry for the purposes contained in the resolution and no lesser purpose * * *." Supreme Court Record from U.S. District Court for the District of Columbia, 20.

tions, must have been received before the case could have been presented to the grand jury again. The defendant argues that 2 U.S.C. § 194 "should be construed to authorize the commencement of a criminal proceeding by the exercise of the United States Attorney's duty to bring a contempt citation before the grand jury, *only* if he does so during the tenure of the Congress whose contempt citation is certified by an incumbent speaker of the House or President of the Senate."

This Court does not believe that 2 U.S.C. § 194 should be construed in the manner suggested by the defendant. 2 U.S.C. § 194 requires the President of the Senate or the Speaker of the House to certify to the United States Attorney a "statement of fact" under the seal of the Senate or House. The facts to be certified in this way are that the witness was summoned as provided in 2 U.S.C. § 192; that the witness failed to comply in one of the specified ways; and that these facts have been reported to either House of Congress. These facts, once certified, remain facts. As such, they are sufficient to permit the United States Attorney to present the matter to a grand jury, regardless of a lapse of time necessitated by trial under an erroneously worded indictment and the reversal of conviction on appeal. 2 U.S.C. § 194 must be read in conjunction with 18 U.S.C. § 3288, which permits reindictment at the term of court next succeeding the dismissal of an indictment found defective or insufficient for any cause. Since the facts of the alleged offense had previously been conveyed to the United States Attorney through the method prescribed in 2 U.S.C. § 194, there was no need for a second certification of these facts in order to permit reindictment within the time allowed in 18 U.S.C. § 3288.

It is possible that the defendant means to state a different contention—that is, that since the certified "statement of fact" made by the presiding officer of the Senate or House must state that the witness refused to answer a "question pertinent to the subject under inquiry," 2 U.S.C. § 194, and since the first indictment was dismissed by the Supreme Court on the ground that the statement therein of the "subject under inquiry" was insufficient, the new Senate certification is required in order to inform the United States Attorney of a different "subject under inquiry" as the basis for a new indictment. This argument, in other words, assumes that the Congress itself must specify the particular "subject under inquiry" which would thereby become the "subject under inquiry" alleged in the indictment.

This Court has not heard argument on this point, nor has it received any evidence on the point. The contempt citation actually in the hands of the United States Attorney has not been introduced into evidence, and therefore what it does or does not specify is not in the record before this Court. Moreover, whether the Supreme Court would extend Watkins, supra, and Russell, supra, to require the Congress itself to specify the "subject under inquiry" is in no way even remotely suggested in those opinions. Indeed, the only Supreme Court language on the subject holds directly to the contrary:

> "When the facts are reported to the particular House, the question or questions may undoubtedly be withdrawn or modified, or the presiding officer directed not to certify; but if such a contingency occurs, or if no report is made or certificate issued, *that would be matter of defence, and the facts of report and certificate need not be set out in an indictment under the statute.*"
> In re Chapman, 166 U.S. 661, 667, 17 S.Ct. 677, 680, 41 L.Ed. 1154 (1897). (Emphasis added.)

Thus the Government does not have to allege or prove compliance with 2 U.S.C. § 194, and if non-compliance is relevant at all, that argument would more properly be heard at the trial as a matter of defense. But see Ex parte Frankfeld, 32 F.Supp. 915 (D.D.C.1940). The Court is not indicating that the defendant should

not have raised the matter in this pretrial motion to dismiss under Rule 12(b)(2), Fed.R.Crim.P., but the Court has concluded that because of Chapman, supra, and because the issue is intimately bound up with central issues to be decided at trial, this ground for the motion to dismiss, if advanced more specifically by the defendant, should be deferred for determination at the trial. Rule 12(b)(4), Fed.R.Crim.P.