UNITED STATES of America,
Plaintiff,

v.

William D. BARNES, Clarence E. Coons, John Lee, and Richard Spasoff,
Defendants.

Cr. No. 27444.

United States District Court
S. D. California,
Central Division.
July 16, 1959.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Asst. U. S. Atty., Criminal Div., and Bruce A. Bevan, Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Hannon & Hannon, by Robert E. Hannon, Castro Valley, Cal., for defendants.

HALL, District Judge.

On March 4, *1959*, an Indictment was returned in this District charging that on or about June 10, *1949*, within this District and Division, and in a place under the exclusive jurisdiction of the United States known as Branch United States Disciplinary Barracks, Camp Cooke, California, defendants murdered one Charlie W. Taylor, Jr.

The defendants have filed a Motion to dismiss the Indictment.

While the Motion to dismiss is based on five separately-stated grounds, all of them turn upon the charge that the defendants, and each of them, have been denied a speedy trial as guaranteed by the Sixth Amendment to the Constitution of the United States in that, through no fault of the defendants, ten years have elapsed since the date of the commission of the offense and the date of the Indictment.

The Motion to dismiss was a speaking motion in that at the hearing, all of the records of the court-martial proceedings of these defendants, which resulted in their conviction, were introduced in evidence.

Before proceeding with a discussion and decision of the points of law raised, it is necessary to briefly give a review of undisputed facts.

On June 10, 1949, Charlie W. Taylor, Jr., then confined as a Military prisoner at Camp Cooke, met his death as a result of force and violence. The four defendants named herein were likewise Military prisoners at the same Camp, and were on August 12, 1949, charged with the murder of Taylor before a Military

court-martial, tried, convicted, and given the death penalty which was later commuted.

Thereafter, John Lee, one of the defendants, filed a Petition for Writ of Habeas Corpus, which was ordered granted by the Supreme Court on January 12, 1959 [Lee v. Madigan, 358 U.S. 228, 79 S.Ct. 276, 3 L.Ed.2d 260] on the ground that the Military had no jurisdiction under Section 92 [1] of the Articles of War (10 U.S.C. § 1564*) in force in 1949, in that the offense charged was committed "in time of peace."

The formal charge in the court-martial proceeding was filed on August 12, 1949. Preceding that, however, the records reflect that on June 23, 1949, one Robert T. Frederick, Major General, U. S. Army Commanding, Headquarters Fort Ord, California, in a communication to The Adjutant General, Department of the Army, Washington, D. C., reported the incident, and recommended:

"5. The facts set forth in Paragraph 2, supra, and the inclosures attached hereto, compel the conclusion that those responsible for the death of General Prisoner Charlie W. Taylor, Jr., should be tried for murder.

"6. Since Article of War 92 prohibits the trial of individuals concerned for the crime of murder by General Court-Martial, *it is recommended that action be taken to effect the transfer of the transfer of jurisdiction to the proper federal authorities.*" (Emphasis supplied.)

copy of which was sent to the Commandant at Camp Cooke under date of June 24, 1949.

On *June 24, 1949*, A. A. Watson, Lt. Col. AGD, Asst. Adj. Gen., in a commu-

nication to the Adjutant General, Department of the Army, Washington, D. C., stated: "Concur in conclusions and recommendations set forth in Paragraphs 5 and 6 of basic communication."

On *July 6, 1949*, in a communication from Headquarters of the Sixth Army, San Francisco, through the Commanding General at Fort Ord, to the Commandant, Camp Cooke, E. A. Thornton, Dept., AGD, Asst. Adj. Gen., it was stated in Paragraph 2, as follows:

"2. The original of the attached report should be retained by the Commandant, Camp Cooke, *for use by the civil authorities charged with the prosecution of the general prisoners committing the assault on G. P. Taylor, deceased.*" (Emphasis supplied.)

On *July 14, 1949*, a letter to The Judge Advocate General, Department of the Army, Washington, D. C., from Preston B. Mayson, Lt. Col. AGD, Asst. Adj. Gen., for the Commanding General, stated partially as follows:

"3. It is apparent that the matter of jurisdiction over criminal offenses committed on Camp Cooke Military Reservation, which are not punishable under the Articles of War, should be determined prior to the filing of charges in the murder case under consideration. While the question of jurisdiction is a matter to be affirmatively raised by the defense, nevertheless, the question should be settled prior to any criminal proceedings. * * *

"4. *In the event it is determined that Federal jurisdiction exists in the instant murder case, and no action has been taken to institute criminal proceedings, it is the pro-*

---

[1]. "Any person subject to military law found guilty of murder shall suffer death or imprisonment for life, as court-martial may direct; but if found guilty of murder not premeditated, he shall be punished as a court-martial may direct. Any person subject to military law who is found guilty of rape shall suffer death or such other punishment as a court-martial may

direct: *Provided, That no person shall be tried by court-martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace.*" (Italics provided).

* Now 10 U.S.C.A. § 918.

posal of this headquarters that one of the eyewitnesses to the murder be taken before the appropriate U. S. Commissioner for the purpose of swearing out a complaint, in order to compel the institution of criminal proceedings. A period of over thirty days has passed since the commission of the crime, and delay has become serious. Expeditious action is therefore requested." (Emphasis supplied.)

On *July 25, 1949*, E. A. Everitt, Colonel, Cavalry, Commandant, sent the following message to the Commanding General, Fort Ord, California:

"For your information, two Federal Bureau of Investigation Agents, Mr. A. Rose and Mr. John J. Canny, were here investigating subject case during the period 21 to 23 July 1949. Results their investigation is unknown."

On *August 9, 1949*, W. Landry, 1st Lt. AGD, Asst. Adjutant, Camp Cooke, advised the Commanding General at Fort Ord that:

"1. At the request of Mr. Norman W. Neukom, U. S. Attorney, Sgt 1/Cl. Oran A. Parker, RA 32022415, of this Organization, was placed on Temporary Duty to Los Angeles, California, *for the purpose of appearing as a witness in the Grand Jury indictment* involving the homicide of General Prisoner Charlie W. Taylor, Jr. ASN 34532295, R/N 2295."

In the meanwhile, *August 3, 1949*, W. P. Connally, Jr., Colonel, JASC, Assistant Judge Advocate General, advised the Commanding General, Sixth Army, Presidio of San Francisco, California, that: "The Secretary of the Army, pursuant to the provisions of the War Department letter, * * * authorized the trial of General Prisoners (Barnes, Coons, Lee and Spasoff) by general court-martial for murder of General Prisoner Charlie W. Taylor, Jr."

At the time of the hearing on the Motion to dismiss, it was stipulated by the United States Attorney that in June, 1949, the United States Attorney's Office of the Southern District of California, prepared an Indictment charging these four defendants jointly with first degree murder of Charlie W. Taylor, Jr. It is also clear that the matter was investigated by the Federal Bureau of Investigation, a civil authority, and that an Assistant United States Attorney had either partially presented the matter to the Grand Jury, or was preparing to do so.

It is quite evident from the above-quoted correspondence in the Military files that two Federal Bureau of Investigation Agents, on July 21 and July 23, 1949, were at the Base investigating the murder, and that as late as *August 9, 1949*, (after the authorization for Military court-martial on August 3, 1949) Sgt. Oren A. Parker of Camp Cooke was placed on temporary duty in Los Angeles at the request of the United States Attorney at Los Angeles for the purpose of appearing as a witness in a Grand Jury investigation concerning the murder of Charlie W. Taylor.

It is also clear that no indictment was returned by the Federal Grand Jury for the Southern District of California empaneled in *1949*, and that none was returned against the defendants until March 4, *1959*, in the instant case.

The record of the Military file of the court-martial also shows that at the commencement of the trial before the court-martial, counsel for defendants raised the question as to the jurisdiction to proceed against the defendants by court-martial under Article of War, Section 92, in that it was claimed that the offense was committed "in time of peace." This contention was ultimately upheld by the Supreme Court in Lee v. Madigan, supra.

The essence of defendants' contention is that the delay in bringing them to trial on the Indictment of March 4, 1959, was occasioned by the "deliberate choice" on the part of the government.

The principal authority relied upon by defendants is United States v. Provoo,

D.C., 17 F.R.D. 183, where Judge Thomsen wrote an extended opinion exhausting the authorities, both by case and historically. The United States took an appeal, and on October 17, 1955, the judgment of the District Court granting the petition of *Provoo* for Writ of Habeas Corpus was unanimously affirmed.

Government counsel here would have the court distinguish the Provoo case, urging that the record in that case showed that the choice to prosecute Provoo for treason in New York rather than where "he was found" in the District of Maryland, was in bad faith. But Judge Thomsen very carefully pointed out in his opinion [17 F.R.D. 183, at page 202] that neither bad faith nor an honest mistake on the part of government officials will excuse non-compliance with the Sixth Amendment requiring a speedy trial. There, the court said:

> "Counsel for defendant argue that the choice was made in bad faith. The government argues that it was an honest mistake. I find merely that it was a deliberate choice for a supposed advantage, which caused as much oppressive delay and damage to the defendant as it would have caused if it had been made in bad faith."

Without reviewing all of the authorities so well done by Judge Thomsen in his case, it seems to me that the unanimous affirmance by the Supreme Court of his judgment in that case, without opinion, and the statement of the Supreme Court in Pollard v. United States, 352 U.S. 354, at page 362, 77 S.Ct. 481, at page 486, 1 L.Ed.2d 393 that: "We do not have in this case circumstances akin to those in United States v. Provoo, 17 F.R.D. 183, 201, affirmed mem. 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761, where Judge Thomsen found the delay 'caused by the deliberate act of the government' which the accused attempted to correct." compel the conclusion that it need not be bad faith or an honest mistake on the part of government officials, but if there was a *deliberate choice* made by government officials to prosecute the defendants by general court-martial instead of by civil authority, the Sixth Amendment right to a speedy trial has been denied.

Particularly is this so in this case where the court and the grand jury were in constant session in this District at the time, an investigation had actually been begun by the Federal Bureau of Investigation and the United States Attorney, and Indictment drawn, and Military witnesses released for testimony before the Grand Jury; and where the Military officials themselves, as seen by the above-quoted portion of the letter of *June 23, 1949*, at least had a doubt as to whether or not Article of War, Section 92, applied, and recommended that action *"be taken to effect the transfer of jurisdiction to the proper federal authorities."*

There are present in this case none of the circumstances which frequently happen where there has been long delay in bringing an accused person to trial because of the flight of the accused, or because of circumstances which the accused person puts in the way of his apprehension and prosecution, or circumstances over which the government had no control. Here, the defendants have at all times been firmly in custody of the Military and Civil authorities. They did nothing to delay the presentation of the matter to the Grand Jury or their prosecution in the United States District Court of the District wherein the crime was committed; and they "attempted to correct" the wrongful exercise of jurisdiction by the Military when they timely raised, before the General Court-Martial, at the commencement of the proceedings, the question of the jurisdiction to proceed under Article of War, Section 92.

I conclude that the prosecution of defendants by court-martial under Article of War, Section 92, without jurisdiction therefor, was such a "deliberate choice" on the part of the government, under the facts in this case, as to amount to a denial of a speedy trial of the defendants

by the civil authorities, in violation of their rights under the Sixth Amendment to the Constitution of the United States.

The Motion to dismiss was made on behalf of defendants Barnes, Coons, Lee and Spasoff.

Coons was brought here from the Medical Center for Federal Prisoners at Springfield, Missouri, to which place he was transferred as a mental patient with a mental illness diagnosed as "paranoid schizophrenia and sociopathic personality disturbance," but the certificate states that he was at that time competent to understand the nature of the proceedings pending against him and to assist counsel in his defense. The certificate is dated *March 24, 1959*.

Since the matter has been pending here, however, the defendant Coons, while committed to the Los Angeles County Jail, has written letters to the court and to counsel, Mr. Hannon[2] indicating he "fired" Hannon, signed papers he did not understand, wanted his name off all papers, and wanted to go back to Springfield.

On the day of the hearing, in order to be sure that the defendants were satisfied that they had competent and effective counsel in Mr. Hannon, the Court interrogated each one of them. It became apparent to the Court that there was some doubt concerning the present mental competence of Coons, and the Court appointed Dr. Karl Von Hagen, a competent psychiatrist, to examine Coons. Dr. Von Hagen examined Coons at the County Jail, and reported that in his opinion Coons is presently insane and so mentally incompetent as to be unable to understand the proceedings against him, or to properly assist in his own defense.

While the case is to be dismissed on Constitutional grounds, and it seems there may be little that Coons could do to properly "assist" counsel in that regard, the Statute (18 U.S.C. § 4244) is cast in the alternative. If the accused is "presently insane *or* otherwise so mentally incompetent as to be unable to understand the proceedings against him, *or* properly to assist in his own defense," the court shall hold a hearing as to his then state of sanity, and may commit him under 18 U.S.C. § 4246.

Thus the ability to assist counsel in his defense is not a preliminary prerequisite to the hearing on his sanity, under 18 U.S.C. § 4244, and commitment under 18 U.S.C. § 4246. If he is insane, he may be committed. If he is so mentally incompetent as to be unable to understand the proceedings, he may be committed.

It must not be forgotten that underlying Chapter 313 of the Penal Code (Sections 4241–4248 of Title 18, U.S.Code), is the concept of *some protection to society*, as well as the preservation of the rights of an accused person.

The Court finds, as a fact, from all the evidence, and adjudges, that Coons is presently insane and so mentally incompetent as to be unable to understand the proceedings against him, and hereby orders that defendant Coons be committed to the custody of the Attorney General of the United States, or his authorized representative, until he shall become mentally competent to stand trial, or until the pending charges in the instant case are disposed of as to him according to law.

As to the remaining defendants, Barnes, Lee and Spasoff,

It Is Ordered, Adjudged and Decreed that the Motion to dismiss the Indictment in the instant case be, and the same is hereby granted. And

It Is Further Ordered that the Writs of Habeas Corpus ad Prosequendum heretofore issued for each of said defendants be, and they are hereby discharged.

It Is Further Ordered that the Clerk stay entry of the within Judgment and Order until July 16, 1959, at 12:00 o'clock noon, P.D.S.T.

2. Mr. Hannon is volunteer counsel for Coons.