**UNITED STATES of America**

v.

**Francis BURKE.**

**Cr. No. 269–62.**

United States District Court
District of Columbia.

Nov. 6, 1963.

David C. Acheson, U. S. Atty., Donald S. Smith, Barbara A. Lindemann, Asst. U. S. Attys., for plaintiff.

Irving G. McCann, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Defendant Burke has moved to dismiss a 30-count indictment against him charging violations of 18 U.S.C. § 1341 (use of the mails in a scheme to defraud), on the grounds that trial of the defendant under this indictment would violate his constitutional right not to be placed twice in jeopardy and his constitutional right to a speedy trial. Each of these points will be considered separately.

### 1. *Double Jeopardy.*

Defendant went on trial in this case with a number of co-defendants on January 14, 1963. The trial was protracted, lasting through January, all of February and March, and into April, 1963. On April 9, 1963, Judge Sirica of this court *sua sponte* declared a mistrial as to defendant Burke, because Burke had for some days prior thereto been confined in the psychiatric ward of New Rochelle Hospital, New Rochelle, New York. A psychiatrist appointed by the court at that time reported that Burke was "suffering from an Acute Psychotic Depressive Reaction, and that presently he is incompetent because of his mental condition to continue with the trial now in progress, to consult with counsel, or to participate in his own defense." Judge Sirica requested Burke's attorney to move for a mistrial, which Burke's attorney refused to do on the ground that Burke was incompetent and could not authorize him to take such action. In these circumstances, Judge Sirica very properly declared a mistrial as to Burke and permit-

ted the trial of the other defendants to continue. Burke now asserts that for him to be tried under the same indictment would amount to double jeopardy.

Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), is completely dispositive of defendant's argument. There the Supreme Court declared:

> "Since 1824 it has been settled law in this Court that "The double-jeopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." [Citing Wade v. Hunter, 336 U.S. 684, 688 [69 S.Ct. 834, 93 L.Ed. 974] (1949), and other cases.] Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." Gori v. United States, supra, 367 U.S. at 367–368, 81 S.Ct. at 1525–1526, 6 L.Ed.2d 901.

In the instant case, the declaration of a mistrial *sua sponte* was completely proper, since the ends of substantial justice could not have been attained without discontinuing the trial and since to continue the trial would have amounted to a complete miscarriage of justice as against this defendant.

The motion to dismiss on the ground that trial now of the defendant on the same indictment would amount to double jeopardy will therefore be denied.

### 2. *Speedy Trial.*

Defendant Burke was indicted, with nine other defendants, in a prior indict-ment charging violations of 18 U.S.C. § 1341, use of the mails in a scheme to defraud.[1] The indictment was presented on July 22, 1959, in the United States District Court for the District of Puerto Rico. All of the alleged victims of the scheme to defraud were identified with Puerto Rican addresses; all of the defendants were residents of continental United States. Defendant Burke was arrested on July 29, 1959, in New Rochelle, New York, and thereafter was released on bond. He employed counsel in Puerto Rico to defend him in Puerto Rico, and paid counsel $1,000 for that purpose. The defendants, other than defendant Burke, twice moved for continuances of the trial date, which continuances were granted and trial was set for June 6, 1960. The defendants, other than defendant Burke, then moved to have the case transferred to the United States District Court for the District of Columbia. The motion to transfer was granted on May 24, 1959, and the case was transferred to the District of Columbia on June 14, 1960.[2] Defendant Burke participated in none of these motions. On August 5, 1960, Judge Walsh of this Court set October 10, 1960 as the date on which trial would commence. On September 7, 1960, defendant Burke's counsel moved in this Court for a severance from the other defendants, and for a speedy trial, asserting that he had participated in none of the motions to delay and that joinder with the other defendants was prejudicial. This motion came on for hearing on September 14, 1960, together with a motion by the Government to have the trial date postponed to January, 1961. Defendant Burke opposed the Government's motion. On September 14, 1960, Chief Judge Pine denied defendant Burke's motion for relief from prejudicial joinder, and set trial date for November 1, 1960.

On October 7, 1960, counsel for defendant Burke and the other defendants ap-

---

1. That indictment cited, in addition, 18 U.S.C. § 3237, which merely specifies that for venue purposes an offense involving use of the mails is a continuing offense.

2. United States v. Rossiter, et al., Criminal No. 510-60.

**44**

peared before Judge Walsh on certain pending motions. At that time, Mr. John C. Conliffe, Jr., chief of the criminal division of the U. S. Attorney's office, stated to the Court:

"I have discussed the matter with Mr. Gasch, the United States Attorney. He has requested me to ask the Court to continue this motion for the reason the Government intends to dismiss the present indictment. The Government intends to re-present the matter to a Grand Jury in the District of Columbia to ascertain whether or not further action will be taken in the matter. But we do not intend to dismiss this indictment. We do not desire that it be dismissed today for the main reason it would be a hardship for the defendants if, perchance, the Grand Jury in the District of Columbia, after the matter is presented to them, returns a new indictment, in all probabilities whatever bond these defendants are on now can be transferred to the new indictment without involving an additional premium. If the present case were dismissed, it would mean an additional hardship for the defendants. So the motion of the Government this morning is that these motions set before Your Honor today be continued. Now, I cannot suggest a date, Your Honor, because we anticipate it will take approximately six weeks to present this matter to a new Grand Jury, that is, to thoroughly investigate it and present it. Of course, that will [not] come within the trial date set by Judge Pine, November the 1st. I indicated to Judge Pine in chambers yesterday what the office intended doing. I would suggest a continuance of at least six weeks, Your Honor."

Over the objections of counsel for all defendants, including Burke, Judge Walsh postponed the hearing on the motions to December 8, 1960. On October 11, 1960, however, defendant Burke filed a motion to dismiss with prejudice. On October 13, 1960, on motion of the Government, Judge Pine dismissed the indictment against defendant Burke and one other defendant, but without prejudice to the bringing of a new indictment.

A new indictment was filed on March 26, 1962, naming Burke and 13 others, and again charging violation of 18 U.S.C. § 1341. The only significant difference between this indictment and the prior indictment is the list of "victims" of the alleged scheme to defraud, all of the victims in the instant case being residents of continental United States. Otherwise, the substance of the scheme to defraud—involving the offers of future loans, the securing of immediate cash collateral for the future loan, and the failure ever to complete the loan or to return the collateral—is the same. After various pretrial motions, including a motion by defendant Burke to dismiss for failure to grant him a speedy trial (which motion was denied by Judge Pine on May 21, 1962 and denied again by Judge Sirica at the time of trial), the case went to trial on January 14, 1963.

During the trial, after the defendant Burke was discovered to be confined in the psychiatric ward of New Rochelle Hospital, New Rochelle, New York, Judge Sirica appointed a psychiatrist to examine Burke and report to the Court. Part of his report was as follows:

"On examination the patient was half-sitting in bed, staring ahead, paying little attention to the examiner. He was hyperventilating and tearful. His orientation was poor for time, (did not know the date, day of week—said it was '62 or '63). He was uncertain why he was in the hospital. He said 'they will come to get me' repetitiously and 'they hate me' also repetitiously. He denies hearing voices, and cries over the statement 'a hotel room is a lonely place.'

"According to the patient's wife the tension has been building up for weeks with insomnia, anorexia, worry, and concern over the future and

stated he 'didn't want to live'. His final break seems to have been acute.

"In addition to the above, he is retarded, inattentive, speaks in a low, at times inaudible, voice. He appeared almost catatonic at times, but retains his depressive affect. His field of interest is very narrow, and he cannot be directed into other fields.

\* \* \* \* \* \*

"It is my opinion that Mr. Burke is suffering from an Acute Psychotic Depressive Reaction, and that presently he is incompetent because of his mental condition to continue with the trial now in progress, to consult with counsel, or to participate in his own defense."

The latest report on defendant Burke's psychiatric condition was filed on September 20, 1963, in which report the defendant's psychiatrist stated:

" \* \* \* I have been seeing the above named in psychotherapy since his discharge from New Rochelle Hospital. He has recovered to a point where I am now spacing out the therapeutic intervals, and he is beginning to function fairly well. He has returned to his work as an insurance salesman, and though not quite as successful as he has been in the past, he is able to do some selling, but he feels that at the present time something has gone out of his selling ability and he does not have the talent now that he used to possess.

"He is no longer depressed, and I feel he is quite capable, if necessary, to stand trial. \* \* \*

\* \* \* \* \* \*

" \* \* \* I feel Mr. Burke is a well man at the present time, at least on the road to recovery \* \*."

In these circumstances, the issue is whether trial now would violate defendant Burke's constitutional right to a speedy trial, as guaranteed by the Sixth Amendment: " \* \* \* the accused shall enjoy the right to a speedy and public trial \* \* \*."

To apply this constitutional standard, this Court must first determine the time when the alleged unconstitutional delay began to run. There is no claim here that there was any undue delay in commencing the first trial under the second indictment. Nor is there any claim that there has been any undue delay between the declaration of a mistrial as to this defendant in April, 1963, and the setting of a trial date at the present time. Nor is there any claim that either the first or the second indictment was presented after the five-year statute of limitations had run, 18 U.S.C. § 3282, since both indictments were filed well within the time permitted.

■ The defendant has argued that the time should be computed from the time the first indictment was presented, July 22, 1959, on the ground that the two indictments are so similar as to amount to one continuing indictment. This contention must be rejected, however. Each use of the mails in a scheme to defraud is a separate and distinct offense. Thus the offenses charged in the second indictment are technically different from the offenses charged in the first, just as each offense in the two indictments is different from every other offense.

■■ This Court has concluded that the time should be computed not from the time of the presentment of either indictment, but rather from the time of the offenses themselves, as charged in the second indictment—namely, on various specific dates between May 15, 1958 and June 29, 1959. (The first indictment specified dates wholly within this period —namely, between November, 1958 and January, 1959.) Although the periods between offense and indictment, and between indictment and trial would normally be computed separately, there are exceptional circumstances when the constitutional guarantee of a speedy trial necessitates considering the entire period between offense and eventual trial in order to determine whether the guarantee has been violated. Petition of Provoo, 17 F.R.D. 183 (D.Md.1955), aff'd.

per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955); United States v. Barnes, 175 F.Supp. 60 (D.Calif.1959). "The number of years having elapsed since the commission of the offense is an important, but not conclusive, criterion." Fouts v. United States, 253 F.2d 215, 217 (6th Cir. 1958).[3] Thus although Rule 48(b) seems to have fragmented the periods[4], the constitutional guarantee of a speedy trial requires the Court, in the circumstances of this case, to decide whether the guarantee would be violated by trial now on charges which allege violations between May of 1958 and June of 1959.

■ To decide whether a particular period of delay violates the constitutional guarantee to a speedy trial, courts must examine carefully the particular facts in the case presented. "The right to a speedy trial is necessarily relative. It is consistent with delays and *depends upon circumstances.*" Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905). (Emphasis added.) "*Whether delay in completing a prosecution* * * * *amounts to an unconstitutional deprivation of rights depends upon the circumstances.* [Citations omitted.] The delay must not be *purposeful or oppressive.*" Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 485–486, 1 L.Ed.2d 393 (1957). (Emphasis added.) "[A]n extremely careful appraisal of the circumstances should be made by the court." Fouts, supra, 253 F.2d at 217. "[C]areful scrutiny is demanded by the exacting man-

date of the Sixth Amendment." Nickens v. United States, 323 F.2d 808, 812 (D.C. Cir. 1963) (concurring opinion).

There are four separate circumstances which lead this Court to conclude that the period between the offenses and trial in the immediate future amounts to a delay which is both "purposeful" and "oppressive," to use the language of the Supreme Court in Pollard, supra, and that trial now would thus violate the defendant's right to a speedy trial.

In the first place, although the two indictments charged separate offenses, there is an important connection between these two indictments which requires this Court to conclude that the time required to present a new indictment significantly delayed the trial. Trial on the first indictment was ready to go forward in October of 1960, under court order, when the Government, for some reason, decided that it would be more advantageous to dismiss the first indictment and bring a new indictment. The Government definitely saw a binding link between the two indictments. As Mr. Conliffe stated to the court on October 7, 1960, the Government intended "to re-present the matter" to a grand jury. If the two indictments were completely separate, there would have been no need to dismiss the first in order to bring the second. Thus this Court must conclude that the Government exercised a "deliberate choice for a supposed advantage," Petition of Provoo, supra, 17 F.R.D. at 202, which means that the delay between October 7, 1960, and the

---

3. "[T]he constitutional guarantee protects against undue delays in presenting the formal charge as well as delays between indictment and trial. The Supreme Court's affirmance .of Judge Thomsen's ruling in Provoo, [supra], seems to have settled the point. * * * In a non-capital case, it is true, mere delay in presenting the charge will rarely work a deprivation of the constitutional right, for permissible time in that instance is normally governed by the statute of limitations. Yet, if the delay is 'purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393, even an indictment within

the limitation period may come too late to square with the Sixth Amendmc..t." Mann v. United States, 113 U.S.App.D.C. 27, 29–30, n. 4, 304 F.2d 394, 396–397, n. 4 (1962), cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962).

4. "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." Rule 48(b) F.R.Crim.P.

presentment of the new indictment on March 26, 1962, was "purposeful," in the language of Pollard, supra. Compare United States v. Shelton, 211 F.Supp. 869 (D.D.C.1962).

In the second place, assuming this connection between the first and second indictments, the delays necessitated by the change of venue from Puerto Rico to the District of Columbia, granted on motion of all defendants except defendant Burke, must also be considered. Defendant Burke was ready to proceed with trial in Puerto Rico. If he had succeeded in doing so, this matter might well have been disposed of in 1960.

Both of the above considerations were presented to Judge Pine and Judge Sirica when they denied previous motions of defendant Burke for dismissal for lack of a speedy trial. But in the interval since they so ruled, two additional considerations have developed.

The first of these later developments is the mental breakdown of defendant Burke. The mental condition of the defendant, if such condition has changed during the period between offense and trial, is highly relevant to deciding whether the guarantee of a speedy trial has been violated. Petition of Provoo, supra, 17 F.R.D. at 195, 203; Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19 (1957). Here we have a defendant whose mental and emotional processes broke down during the strain of a protracted trial after a prolonged delay since first being indicted, and who is now, according to one psychiatrist, competent to stand trial. The Government has now moved, however, for the commitment of the defendant to Saint Elizabeths Hospital for the normal 90-day period to determine the defendant's competency. The defendant's psychiatrist has stated to this Court, by affidavit, that

"Incarcerating him for three months in St. Elizabeth's Hospital, in my opinion, would be a procedure which would serve no purpose save perhaps making him worse. * * * [I]n-carcerating him for three months in St. Elizabeth's would interfere with the therapy which I have outlined for him and proceeded on with a great deal of success."

Thus, defendant's mental condition is still precarious, and commitment to Saint Elizabeths Hospital—which this Court might well be required to order before trial to determine defendant's competency at the present time—is presented to the Court as a serious threat to defendant's continued stability. In these circumstances, trial now would undoubtedly be "oppressive," to use the language of Pollard, supra, since during the long delay between offense and trial, defendant's mental condition has been seriously impaired.

One final consideration is important in this Court's conclusion that the defendant's right to a speedy trial would be violated by trial at the present time, over four years after the latest date mentioned in the indictment. Both the first and second indictments charged, in effect, that this defendant was merely one of the selling agents for the group of men who were behind the alleged fraud; in fact, the defendant has asserted that he was completely ignorant of the alleged scheme to defraud. Of the fourteen defendants indicted in this (the second) case, eight pleaded guilty (two in companion cases), one pleaded *nolo contendere*, three were found guilty by the jury, one was found not guilty, and one—this defendant—has the charges still pending. In these circumstances, even assuming that the defendant did have some knowledge of the scheme to defraud, the interest of society in punishing this particular individual at this time is slight—especially in view of the emotional punishment which the defendant has already received.

Considering all of these circumstances —the Government's purposeful delay, the co-defendants' delays, the oppressive effect which these delays had upon this defendant's mental condition, and the slight interest of society in punishing this particular defendant at this time—this Court

has concluded that trial now would violate this defendant's constitutional right to a speedy trial. The defendant's motion to dismiss the case will therefore be granted.