Gene Z. **HANRAHAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

William T. P. **SHEA**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

John W. **TYNAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 18038, 18040, 18041.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 12, 1965.

Decided June 24, 1965.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. Monroe H. Freedman, Washington, D. C. (appointed by this court), for appellants in Nos. 18,038 and 18,040, argued for all appellants. Mr. Charles W. Halleck, Washington, D. C. (appointed by in this court), was on the brief for appellant in No. 18,041.

Mr. Donald S. Smith, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, John A. Terry and Miss Barbara A. Lindemann, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and WASHINGTON and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge:

On July 22, 1959, in Puerto Rico, three District of Columbia residents were indicted for fraudulent use of the mail.[1] The indictment alleged sixty-five mailings, all to Puerto Rican citizens, pursuant to a fraudulent scheme whose operations centered in the District of Columbia and whose alleged victims resided in several parts of the United States. On arraignment in Puerto Rico on July 29, 1959, appellants Hanrahan and Shea moved unsuccessfully for a speedy trial. The trial was eventually set for November 16, 1959. On October 28, 1959, however, appellants moved for a change of venue on grounds that prejudicial pretrial publicity against them in Puerto Rico made it impossible for them to obtain a fair trial in that jurisdiction[2] and that a trial in Puerto Rico would place appellants at a serious disadvantage in defending themselves.[3]

---

1. Fraudulent use of the mail is prohibited under 18 U.S.C. § 1341, which provides:

   "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail, matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. As exhibits accompanying the motion appellants filed 17 newspaper articles telling how Puerto Rican businessmen were being swindled by American operators.

   While this motion for change of venue was pending, appellants made two motions for continuance.

3. Since the letters were allegedly mailed in the District of Columbia, venue lay in this district as well as in Puerto Rico. Hagner v. United States, 285 U.S. 427. 52 S.Ct. 417, 76 L.Ed. 861 (1932). It has even been held that the prosecution for mail fraud may be brought in any district through which the mail passes on its way to its destination. United States v. Duma, S.D.N.Y., 228 F.Supp. 755 (1964).

The change of venue was granted on May 24, 1960. On August 5, 1960, appellants were arraigned in the United States District Court for the District of Columbia. At that time the Government requested a delay in trial until January, 1961. In view of appellants' urging their constitutional rights to a speedy trial, however, the court set the trial for October 10, 1960. On September 14, 1960, the Government again requested a trial delay, and counsel for appellants once again pressed for a speedy trial. In continuing the case to November 1, 1960, the court stated:

> "This will give the government a month and a half to prepare and I certainly feel that the preparation which was done in Puerto Rico before the indictment was returned should not be wasted.
>
> * * * * * *
>
> "I feel that I must do this. They are requiring and demanding a speedy trial and they are entitled to that under the Constitution and I am fearful that if I do not grant it, there would be perhaps something said about it in the Court of Appeals, which would not be favorable to the government."

In spite of the court's expressed concern for the appellants' right to a speedy trial, the Government, on October 7, 1960, before a different judge, requested a further continuance on the representation of the Government that "the Government intends to dismiss the present indictment" and "to re-present the matter to a Grand Jury" in about six weeks. Appellants opposed the motion for a continuance and reasserted their right to a speedy trial. The Government's motion for a continuance without date was granted, however, and seventy-six weeks thereafter, on March 26, 1962, a new indictment, presenting the same mail fraud scheme during the same time but with different mailings, was returned by the grand jury in the District of Co-lumbia. On April 27, 1962, appellants moved unsuccessfully for dismissal of the indictment for lack of a speedy trial.

During the trial of the case itself, which finally began on January 14, 1963, the appellants formally renewed their motion for dismissal for lack of a speedy trial. It was apparent during the trial that so much time had elapsed since the events in suit that some of the witnesses were unable to recall them or to produce records concerning them. One witness testified: "It has been so long I can hardly remember." Another witness, on a single page of transcript, testified: " * * * to the best of my recollection * * * I believe it was * * * if I recall * * * I don't recall." Defense records were lost or destroyed, and the Government on several occasions during the trial obliquely suggested to the jury that the appellants themselves had lost or destroyed them. Co-defendant Burke suffered a breakdown late in the trial, requiring a mistrial as to him. The indictment as to Burke was later dismissed for delay in the prosecution, the trial judge noting that Burke's breakdown had occurred during "the strain of a protracted trial after a prolonged delay since first being indicted." United States v. Burke, D.D.C., 224 F.Supp. 41, 47 (1963).

In sum, appellants were finally convicted on April 19, 1963, five years after commencement of the crime of which they were accused and almost four years after they were first charged with the offense—this delay in spite of repeated and persistent attempts to obtain a speedy trial and dismissal of the prosecution for want thereof.

The Government makes no real effort to justify the delay caused by bringing the first indictment in Puerto Rico. It would have this court ignore that delay and consider only the time which elapsed from the return of the second indictment to trial in determining the issue of speedy trial.[4] The District Court, in denying appellants' motion for dismissal,

---

4. On appeal the Government argues that "nothing that happened before March 26, 1962, the date the indictment *in this case* was returned, is of any significance what- ever [in assessing appellants' claimed denial of speedy trial]." (Emphasis in the Government's brief.)

acknowledged that "there would appear to be support" for appellants' motion to dismiss if the second indictment had charged the same offense as the first, but held that "the fact is that the second indictment in this case, while alleging substantially the same scheme to defraud, charges in its various counts violations of law entirely different from those charged in the first indictment." [5] We find that this action of the District Court exalts form over substance.

Rule 48(b), FED.R.CRIM.P., if not the Sixth Amendment, in terms requires the prosecutor to proceed without "unnecessary delay." The prosecutor's responsibilities under these provisions begin, not when the indictment is returned, but when the prosecution is begun.[6] Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963), *cert. denied*, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964), does not hold otherwise, if indeed it could in the face of the language of Rule 48(b).[7] Therefore, the critical question in this case is, not when was the indictment filed, but when was the prosecution commenced.

The mail fraud charges brought here involve two essential elements: (1) a scheme to defraud, and (2) use of the mail in furtherance of the said scheme. Where one scheme involves several mailings, the law is settled that each mailing constitutes a violation of the statute. See Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916). But what is not clear is whether, in appraising appellants' claimed denial of speedy trial in this case, successive indictments alleging the same scheme but different mailings should be looked upon as two separate prosecutions or as mere parts of one continuing prosecution. We think that the purposes behind the speedy trial provisions contained in Rule 48(b) and in the Sixth Amendment require that the facts in this case be considered as one continuing prosecution.

In curtailing the length of criminal prosecutions, the law recognizes certain interests of the person accused and attempts to protect those interests. Speedy trial provisions seek, first, to prevent lengthy pre-trial imprisonment where the accused is unable to make bail, or pre-trial restriction of movement when

---

5. This quote is taken from a memorandum filed by Judge Pine, who heard and denied the pre-trial motion for dismissal made by appellants on April 27, 1962. When the motion for dismissal was renewed at the end of the trial, the trial judge, Judge Sirica, denied it, stating:

> "Well, I am not going to overrule Judge Pine, and I feel this way about it: The matter has been heard, it is in the record, and the objection is preserved, and from what I have seen, I don't think that you were denied a speedy trial, from what I have heard of this case."

Thus it can be presumed that the trial judge concurred in the grounds relied on for denial by the judge who heard the pre-trial motion.

6. Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959); Hoopengarner v. United States, 6 Cir., 270 F.2d 465, 469 (1959); Kirkwood v. Harris, W.D.Mo., 229 F.Supp. 904 (1964); United States v. Palermo, S.D. N.Y., 27 F.R.D. 393 (1961); United States v. Barnes, S.D.Cal., 175 F.Supp. 60 (1959); and *cf.* Iva Ikuko Toguri

D'Aquino v. United States, 9 Cir., 203 F. 2d 390, 391 (1951), *cert. denied*, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952). In some cases the formal prosecution may begin with the indictment or information. But in others, the prosecution may begin with the filing of a complaint. See Rule 3, FED.R.CRIM.P.; United States v. Palermo, *supra*.

7. The rule states: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant *who has been held to answer to the district court* * * * the court may dismiss the indictment, information or complaint." (Emphasis added.)

The majority in *Nickens* stated its holding as follows:

> "Appellant's claim relating to the delay between the date of the offense and the *commencement of criminal prosecution* is not covered by Rule 48(b) of the Federal Rules of Criminal Procedure [citing cases], or by the Sixth Amendment * * *." 116 U.S.App.D.C. at 339, 323 F.2d at 809. (Emphasis added.)

bail is available.[8] Second, and perhaps equally important, these provisions seek to minimize the anxiety and attendant evils which are invariably visited upon one under public accusation but not tried.[9] Finally, they seek to insure that the ability of the accused person to answer the charge will not be impaired on account of lost witnesses and faded memories due to the passage of time.[10] In this case, these protected interests were threatened by a public accusation of mail fraud which went unresolved for close to four years. The fact that the second indictment involved thirty incidents of mail usage which differed from the sixty-five originally alleged did not mitigate this threat. The purposes underlying the speedy trial provisions would be hopelessly frustrated if the prosecutor in a mail fraud case could evade his responsibility to prosecute with reasonable diligence by merely substituting for mailings originally alleged other mailings, not alleged, but nevertheless made in furtherance of the same scheme.

■ From the fact alone that the entire period, beginning with the Puerto Rican indictment, must be considered, however, it does not automatically follow that appellants have been denied a speedy trial under the Sixth Amendment, or that there has been unnecessary delay under Rule 48(b). These determinations require analysis of the reasons for the lengthy prosecution and evaluation of those reasons. In some cases, where the delay is uncommonly long and, therefore, the likelihood of prejudice quite high,

the reason for the delay may be of little significance.[11] In this case, however, an analysis of the reasons must be made. The complexity of the alleged scheme and the number of witnesses needed to prove the charges indicate that a considerable time for preparation may have been justifiable. Moreover, after transfer to the District of Columbia it is reasonable to assume that some time was needed by the Government to make the changes necessitated by the new trial setting.

Two questions, however, arise from this record which went unanswered in the trial court because of the court's failure to consider the time preceding the second indictment. First, did the prosecutor exercise reasonable diligence in seeking the second indictment? At the time Government counsel announced his intention to dismiss the Puerto Rican indictment in favor of a new indictment, he estimated that the process would take about six weeks. The actual time elapsing from the date of that estimate to the return of the second indictment proved to be seventy-six weeks [12]—roughly twelve times the original estimate. This disparity demands explanation.

Even if satisfactory explanation is forthcoming, however, a second question remains. It is highly probable that the prosecution of this case would have been shortened by as much as two years if the original indictment had been brought in the District of Columbia,[13] where appellants lived and where the offense centered, instead of in Puerto Rico. Moreover, it is arguable that reasonable re-

8. See Petition of Provoo, D.Md., 17 F.R.D. 183, 198, *affirmed per curiam*, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955); United States v. McWilliams, D.D.C., 69 F.Supp. 812, 814–815 (1946), *affirmed*, 82 U.S.App.D.C. 259, 163 F.2d 695 (1947); Frankel v. Woodrough, 8 Cir., 7 F.2d 796, 798–799 (1925). And see 108 U.Pa.L.Rev. 414, 417 n. 18 (1960); *Note*, 57 Colum.L.Rev. 846 (1957).

9. *Ibid.*

10. *Ibid.*

11. The classic example of a case in which the delay was so long that, whatever its

reason, it required dismissal is United States v. Chase, N.D.Ill., 135 F.Supp. 230 (1955), where the accused had not been tried for 20 years after his indictment for murder. In dismissing the prosecution, the judge understandably made no mention of the reason for the delay.

12. There is testimony in the record that as much as ten months of this time elapsed with no postal inspector assigned to the case.

13. See United States v. Burke, *supra*, 224 F.Supp. at 47 (dismissal of indictment as to one of the co-defendants of appellants in this case).

gard for the interests of the accused might have compelled the Government to anticipate that appellants could not be speedily and fairly tried in a distant place where many of the people spoke no English and where adverse feeling against outsiders charged with defrauding local businessmen was certain to have some effect. Discretion existed in law, it is true, to bring the original prosecution in either the District of Columbia or Puerto Rico. But why was that discretion exercised by bringing the prosecution in Puerto Rico? If the decision to prosecute in Puerto Rico rather than in the District of Columbia was a deliberate choice made for a supposed advantage,[14] then the delay directly resulting from that choice must be considered in appraising appellants' speedy trial claim.

■ The record in this case, voluminous as it is, is not sufficient to enable us to resolve the questions raised by appellants' denial of speedy trial claim, nor should we decide them in the first instance on appeal. Therefore, the case must be remanded for further proceedings. If the court should find that all the delay attributable to the prosecutor was necessary for fair and just prosecution of the charge of mail fraud, then the convictions will stand. If, on the other hand, the court should find that the prosecution was conducted with such disregard of appellants' interests that it can be said that the delay resulted from deliberate, or at least negligent, actions on the part of the prosecutor and the prosecutor fails to show "that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay,"[15] then appellants' Sixth Amendment rights have been denied and the convictions must be vacated and the indictments dismissed.[16] Finally, if no constitutional violation is found, but unnecessary delay under Rule 48(b) is present,[17] then the decision whether to vacate and dismiss lies within the sound discretion of the trial court. In exercising that discretion the court should consider the prejudice resulting from possible loss of evidence[18] as well as the hardships appellants might have suffered by reason of the delay in the prosecution.[19]

We have examined the other point raised on this appeal and found it to be without merit.

Remanded for further proceedings.

WILBUR K. MILLER, Circuit Judge, dissents. He would affirm the judgments herein.

14. See United States v. Barnes, *supra* Note 6, 175 F.Supp. at 64; *cf.* Pollard v. United States, 352 U.S. 354, 361–362, 77 S. Ct. 481, 1 L.Ed.2d 393 (1957) ; Petition of Provoo, *supra* Note 8, 17 F.R.D. at 201.

15. Williams v. United States, 102 U.S. App.D.C. 51, 53, 250 F.2d 19, 21 (1957) (opinion of Judge Bazelon).

16. The Sixth Amendment prohibition encompasses more, of course, than delays caused by the misconduct or negligence of the prosecutor. Extraordinary delays due to inefficient court administration have raised constitutional problems in the past. See King v. United States, 105 U.S.App. D.C. 193, 265 F.2d 567 (*en banc*), cert. denied, 359 U.S. 998, 79 S.Ct. 1124, 3 L. Ed.2d 986 (1959). But no such extraordinary delay appears in the record of this case.

Also, when extreme prejudice has been shown to result from the delay, the cause of the delay may be immaterial. See Note 11 *supra*.

17. Compare Mann v. United States, 113 U. S.App.D.C. 27, 304 F.2d 394, *cert. denied*, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962).

18. Appellants cite several instances during the trial where witnesses could not remember a specific event, and one instance where documentary evidence had been destroyed.

19. Appellants claimed, among other things, substantial loss of income. A co-defendant, whose case was dismissed for delay, suffered a nervous breakdown during the prosecution. See United States v. Burke, *supra*.