**David G. HARRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 4737.**

District of Columbia Court of Appeals.

Argued Feb. 24, 1969.

Decided July 17, 1969.

Thomas P. Smith, Hyattsville, Md., for appellant. Karl G. Feissner, Hyattsville, Md., also entered an appearance for appellant.

Julius A. Johnson, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and James R. Phelps, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

After several months of police undercover activity, a search was made of the premises at 1842 and 1844 Monroe Street, N.W. pursuant to a warrant. Several bags of marihuana and utensils containing traces of marihuana were seized. The police arrested several occupants, among them appellant. He was the owner and manager of these rooming houses. After a jury trial, appellant was convicted of maintaining a common nuisance in violation of D.C. Code 1967, § 33–416 and sentenced to 30 days imprisonment and $500, or 90 days imprisonment.[1]

The tenants in these connected rooming houses were friends of appellant and of one another. In addition to owning and operating the rooming houses, appellant resided there. He did not dispute the Government's proof that frequent "pot parties"[2] took place there attended by occupants of the rooming houses and outside friends or that transactions and conversations concerning the purchase and sale of marihuana took place there. The defense was that appellant did not rent rooms for this purpose and had no knowledge of these activities.

Appellant contends the trial court committed reversible error in quashing a subpoena *ad testificandum* for a material defense witness. At the close of the Government's case, an attorney representing a witness subpoenaed to testify for the defense informed the trial court that his client, standing at his side, was awaiting trial on several charges arising from his residence in the house involved in the instant trial; and that his advice to his client was to decline to answer any questions in this trial, beyond giving his name and current address,[3] and claim his privilege against self-incrimination under the fifth amendment. It was the attorney's position that due to his client's pending trial it could tend to incriminate him if he so much as admitted living at the premises in question or admitted knowing the undercover policeman. Appellant opposed quashing the subpoena and contended the witness should be compelled to take the stand and testify at which point the court could rule on a refusal to answer specific questions on the ground of his fifth amendment privilege. In response to the court's request for an offer of proof, appellant stated he intended the witness to testify (a) that appellant was not present at any time during activities involving the use, sale or possession of the marihuana, (b) that appellant imposed certain conditions on his residency in the house and (c) that there were "certain happenings" between the witness and the undercover policeman "which could have led to an entrapment proceeding" against appellant. In the light of this offer of proof, the trial court agreed with the attorney's position that the witness "has a right to claim the fifth amendment" and quashed the subpoena.

We agree that the trial court should have followed the customary procedure by requiring the witness to take the stand in his turn and then rule on claims of his privilege as they arose. Yet we do not think that in this instance there is reversible error.

When the trial court quashed the subpoena, it had the benefit of having heard all the Government's evidence as well as appellant's offer of proof on the desired testimony of the witness. Since the witness was awaiting trial on charges relating to the very transactions testified to in this trial, in the same houses and in the presence of the same undercover policeman, it is difficult to imagine a more classic situation for the allowance of an invoked claim

1. Appellant, a non-lawyer with experience as an assistant for a court reporter, had previously obtained the dismissal of his court appointed counsel. In representing himself at his trial, he conducted a rather vigorous defense.

2. In this instance, group smoking of marihuana.

3. The client had since moved from the premises involved here.

of the privilege against self-incrimination on any questions which may have been material to the defense in this trial. Since the witness was with his attorney when the court was requested to quash the subpoena, it was not unrealistic for the court to assume that if put on the stand the witness would upon advice of counsel decline to answer any question of benefit to appellant's case and invoke the privilege. Being then familiar with the evidence, the court decided such a claim would be clearly valid, as it would have, and quashed the subpoena rather than compel the witness to await being called to testify.

Beyond this, it would be a futile thing to remand the case for retrial on this ground. There was no issue in the case as to whether appellant was present during the activities testified to by the key Government witness, the undercover policeman. The latter had testified appellant was not present in the rooms where the "pot parties" took place nor when any of the incriminating conversations occurred. The only genuine issue was whether appellant knew of these activities and the presence of marihuana on the premises in view of the evidence that (a) the tenants in the rooming houses were friends of appellant and of one another, (b) appellant owned the houses and resided there, (c) "pot parties" frequently occurred there, and (d) marihuana has a peculiar odor when being smoked.[4] In closing argument, the Government put this issue to the jury substantially as related.[5]

■ It is evident that the testimony of the witness in question would have added nothing of consequence to appellant's case even if he did not claim the privilege

against self-incrimination. For these reasons, we see no prejudicial error.

Appellant also contends he was denied a speedy trial in violation of the sixth amendment and Rule 48 of the Federal Rules of Criminal Procedure.[6] He was arrested on August 17, 1967, and tried on January 3, 4 and 5, 1968. He was free on bond prior to trial.

Appellant was arraigned on August 18, 1967, and demanded trial by jury. His case was first set for trial on September 26, 1967, but was continued at Government request until October 11, 1967. On that date it was not reached for trial and was continued by the court until November 8, 1967. A third continuance, until December 13, 1967, was granted at Government request on the ground that the assigned prosecutor was on emergency leave. The court ordered that no further continuances were to be granted to the Government. On December 13, 1967, the case again was not reached for trial and the court continued it until January 3, 1968, when trial commenced. Appellant filed a pre-trial motion to dismiss the information for denial of a speedy trial on December 14, 1967, and this was denied on December 22, 1967. He renewed the motion at his trial and it was again denied.

The time consumed between arrest and trial was slightly over four and a half months (139 days). The Government was responsible for 50 days delay and 49 days were attributable to court directed continuances when the case was not reached for trial on the date set. The period between arrest and the first trial date accounts for the remaining 40 days.

■ While the delays were unfortunate, there is no "showing of such oppression or

4. *See* Killeen v. United States, D.C.App., 224 A.2d 302 (1966).

5. There was also testimony that the undercover policeman saw marihuana in the hand of appellant's roommate while in appellant's room, though he was not then present; and that appellant was present in an upstairs room while a quantity of

marihuana was on the table and while the room contained a strong ordor of marihuana due to recent smoking of it in the room.

6. This Federal Rule is not binding on this court. In any event, our view of the facts is such that a dismissal would not be warranted under that Rule.

of purposeful, vexatious or arbitrary action as amounts to a deprivation of the appellant's constitutional right." Smith v. United States, 118 U.S.App.D.C. 38, 43, 331 F.2d 784, 789 (1964).[7] Furthermore, appellant makes no showing that he was prejudiced by the delay.

We see no error requiring reversal and the judgment is

Affirmed.

7. Appellant requests in the alternative a remand in accordance with Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F.2d 363 (1965). But this case does not present the drastic situation posed in Hanrahan, where there had been a delay of almost four years between indictment and trial.