**UNITED STATES v. McWILLIAMS et al.**

No. 9438.

United States Court of Appeals
District of Columbia.

Argued May 26, 1947.

Decided June 30, 1947.

EDGERTON, Associate Justice, dissenting.

———◆———

See also 142 F.2d 473.

Messrs. William E. Leahy, Special Assistant to the Attorney General, and Irving S. Shapiro, Attorney, Department of Justice, of Washington, D. C., with whom Messrs. Theron L. Caudle, Assistant Attorney General, and Robert S. Erdahl, Attorney, Department of Justice, of Washington, D. C., were on the brief, for appellant.

Mr. E. Hilton Jackson, of Washington, D. C., with whom Mr. John W. Jackson, of Washington, D. C., was on the brief, for appellee Gerald B. Winrod.

Mr. Albert W. Dilling, of Chicago, Ill., pro hac vice, by special leave of court, for appellee Elizabeth Dilling.

Mr. Lawrence Dennis, pro se.

Submitted on briefs: For appellee Pelley by Mr. T. Emmett McKenzie, of Washington, D. C., for appellees Deatherage and McWilliams by Mr. J. Austin Latimer, of Washington, D. C., for appellee Hudson by Messrs. James A. Davis and Thomas X. Dunn, both of Washington, D. C., for appellee Klapprott by Mr. Charles E. Morganston, of Washington, D. C., and by Robert E. Edmondson, pro se.

Appearances: For appellee Dilling by Mr. J. Austin Latimer, of Washington, D. C., for appellee Broenstrup by Mr. Ira Chase Koehne, of Washington, D. C., for appellee Lyman by Miss Elizabeth R. Young, of Washington, D. C., for appellee Viereck by Mr. Ben Lindas, of Washington, D. C., for appellee Kunze by Messrs. P. Bateman Ennis and Harry Edson Morse, both of Washington, D. C., for appellees Schwinn and Diebel by Mr. Claude A. Thompson, of Washington, D. C., for appellee Sanctuary by Mr. George B. Fraser, of Washington, D. C., for appellee Stahrenberg by Mr. L. J. H. Herwig, of Washington, D. C., for appellee Manufacturers Casualty Insurance Company by Mr. Phidias J. J. Nicholaides, of Washington, D. C.

No appearance for appellees Smythe, Washburn, Clark, Elmhurst, Sage, Alderman, Dennett, Ferenz, Jones, Baxter and Noble.

Before GRONER, Chief Justice, and EDGERTON and WILBUR K. MILLER, Associate Justices.

GRONER, C. J.

This is an appeal from an order of the District Court of December 2, 1946, dismissing an indictment against all of appellees. The indictment had been returned January 3, 1944, charging defendants with subversive activities in violation of the Act of June 28, 1940.[1] The case went to trial before Judge Eicher and a jury on April 17, 1944, and ended in a mistrial some eight months later as a result of Judge Eicher's sudden death. Thereafter on several occasions various of the defendants moved for trial, but without result.

In the early part of 1946 Judge Laws was assigned to the case and a number of hearings on the pending motions to dismiss were had by him. The Government was not ready to go forward and on at least three occasions time was extended in order that, if possible, new evidence might be obtained.

In November, 1946, counsel for the Government and for defendants met with Judge Laws to determine what should be done with the case, and after a full hearing Judge Laws concluded that it was his plain duty to dismiss the indictments for lack of prosecution, and in taking this action he said:

"Usually the Court will permit the prosecutor to decide whether he will bring a case to trial. But where it appears, as here, there is serious doubt as to the success of the case, and that the defendants, because of long delays granted over their objections, cannot obtain a fair trial, the Court should exercise its discretion to deny prosecution. It would be both unjust and un-American to do otherwise.

"The defendants have been before the Court upon these charges for nearly four and one-half years. All of them were brought here from other parts of the country to stand trial. Because of the impoverished state of eighteen of the defendants, they were represented by counsel not of their own choice, but assigned by the Court to serve without compensation. As in all long-delayed cases, the witnesses now are scattered; some are not accessible, more particularly to the defendants who are without funds; the memories of witnesses as to events occurring many years ago are not clear. It is for these reasons among others that the Constitution of the United States requires a speedy trial and that the Congress of the United States has imposed Statute of Limitations to prevent long-delayed prosecutions. I do not see how these defendants now can possibly obtain fair trials.

"Under the circumstances, to permit another trial, which conceivably would last more than a year, with new prosecutors and newly appointed counsel for defendants, with the eventual outcome in serious doubt, as Mr. Rogge [Government counsel] has stated to the Court on three occasions, would be a travesty on justice. I have no doubt the cases should be dismissed and an order to that effect will be entered as to all defendants."

The question for decision on the appeal is (a), whether an action on a motion to dismiss for lack of prosecution is within the sound judicial discretion of the trial judge and (b), if so, under what circumstances may its exercise be controlled on appeal? The answer to the first query is obvious, not only from the provisions of the New Criminal Rules, 18 U.S.C.A. following section 687, but also by the general recognition of the right prior to their enactment. Thus, Rule 48(b) provides inter alia, " * * * or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information on complaint." See also Ex parte Altman, D.C.S.D.Cal., 1940, 34 F.Supp. 106, 108. And the answer to the latter query is equally obvious, since the rule of this jurisdiction is that where there has been a lack of due diligence in the prosecution of a case the trial judge may dismiss and his

---

[1] 54 Stat. 670, 671, 18 U.S.C.A. §§ 9, 11.

order will be sustained on appeal, unless there has been a clear abuse of discretion. Neel v. Barbra, 1943, 78 U.S.App.D.C. 13, 136 F.2d 269. And by abuse of discretion is meant action which is arbitrary, fanciful, or clearly unreasonable. This is also the rule applied by the Supreme Court,—Continental Ill. Nat. Bank & Trust Co. v. Chicago, Rock I. & Pac. R., 1935, 294 U.S. 648, 677, 55 S.Ct. 595, 79 L.Ed. 1110; Burns v. United States, 1932, 287 U.S. 216, 222, 53 S.Ct. 154, 77 L.Ed. 266, and generally followed in other circuits. See Partridge v. St. Louis Bank, 8 Cir., 1942, 130 F.2d 281; Sweeney v. Anderson, 10 Cir., 1942, 129 F.2d 756; Hicks v. Bekins Co., 9 Cir., 1940, 115 F.2d 406, 408; Krause v. Miss. Coal Corp., 7 Cir., 1937, 93 F.2d 515, 517; United Motors S. Inc. v. Tropic-Aire, Inc., 8 Cir., 1932, 57 F.2d 479.

In this case the record shows that from January, 1946, to the dismissal order entered near the end of that year the trial court, at the instance of some of the defendants, again and again sought to compel action which would either result in a trial or dismissal. Its final decision to adopt the latter course seems to us altogether reasonable and proper, and in fact we are not prepared to say it was not compelled in the light of the facts then shown to exist.

Affirmed.

EDGERTON, Associate Justice (dissenting)

The defendants were indicted January 3, 1944 and brought to trial April 17, 1944. The trial was interrupted by the death of Chief Justice Eicher in November 1944. A few days later, on December 7, the court asked each defendant "Do you consent to the trial continuing with another judge presiding?" One answered yes. Three declined to answer, and twenty-two defendants answered no. A mistrial was therefore declared. It is a fair inference that the trial would have continued if the defendants had consented. In that case it would of course have been concluded long ago.

Between December 7, 1944 and March 1945 a few defendants asked for a speedy or immediate trial and a few asked for delay. Most did neither. On March 1, 1945 the prosecutor, Mr. Rogge, announced in open court that the government did not oppose a speedy trial and suggested that the court's Chief Justice be asked to set a trial date. The court said that although it had authority to set the case for trial there were "several considerations—very compelling considerations" that satisfied the court it should not do so at that time. These related to the state of the criminal docket, which had 480 cases awaiting trial, the long time it would take to try this case, and the difficulty of trying it without subjecting other cases to excessive delay.

Nothing more occurred for ten months, except that two of the defendants moved for trial during the summer of 1945.

In January 1946 several defendants moved to dismiss the indictment for want of prosecution. None asked for trial. On February 2, 1946, Mr. Rogge stated in his answer to the motions to dismiss that "the United States has at all times been ready for trial." On February 8, 1946 the court asked Mr. Rogge "are you in position to tell me now as to whether you expect and wish to prosecute this case?" Mr. Rogge asked for two weeks to answer that question, but expressly agreed with the court that the court should set a trial date if the government did not. The following colloquy occurred: "*The Court.* * * * as you know, we have a tremendous problem of appointed counsel in the case—we have had a bill in Congress, as I understand it, for several months to compensate those who were appointed—but I do think, if the Government doesn't move to set it down, the Court should do it himself. *Mr. Rogge.* I agree with you. *The Court.* I did not set it down, and it was not the Assignment Commissioner's fault, but my fault. I did not think it was fair to take counsel away from their business for eight months and not compensate them; nevertheless, I understand there has been a bill brought in Congress to compensate them. I do not know where to turn for counsel. It is my full responsibility for not setting it down * * *." Mr. Rogge then informed the court that he was ready to go

to trial at once: "I would like to amplify my answer a little to say this, that I am ready to proceed, as I said, with my opening statement and ready to call witnesses. However, after reconsidering certain Supreme Court decisions in the light of the Keegan case, not that the indictment is not sufficient, I think it is, but whether the Supreme Court would sustain it, I don't know whether I should."

On March 1, 1946 Mr. Rogge asked for a 30-day postponement of decision on the pending motions to dismiss in order that the government might make an investigation in Germany. On March 15 the court granted a postponement until April 30. On April 30 Mr. Rogge and his staff were carrying on the investigation in Germany. The government then filed a memorandum stating that it desired to prosecute the case provided the investigation produced additional evidence of guilt. The government expressed the opinion that the evidence it already had "together with that which it may reasonably be expected will be secured * * * will warrant the sustaining of a conviction of the defendants, if one is obtained, under controlling decisions of the Supreme Court of the United States." The government asked for 45 additional days to complete the investigation, which had been delayed by conditions in Germany and the large numbers of witnesses and of documents to be examined.

On May 18, 1946 the court overruled the pending motions to dismiss. The court said: "* * * two months after the mistrial was declared * * * the Court adopted a new practice whereby it assumed to assign all criminal cases to trial dates. Such practice still is in effect. In such a practice no greater duty is enjoined upon the prosecution to proceed with or to demand a trial than upon the defendants. Under these circumstances, the Court would not be justified in dismissing these cases for want of prosecution. No trial date thus far has been set by the Court. The reasons appear to me to be valid. However, if any party desires that a trial date be now assigned, the Court will act promptly upon written application being made." In my opinion these views were correct and the court erred when it abandoned them.

On May 29, 1946 one defendant moved for immediate trial.

The case was called on September 20, 1946 for the purpose of setting a trial date. At this hearing the court said: "As far as the Court has been advised, the case * * * is to be prosecuted again by the Government. Inasmuch as this Court has taken over the assignment of trial dates, rather than the Government, I think I should consider at this stage the fixing of a trial date." The government suggested a trial date in December. Mr. Rogge informed the court that the government had found additional evidence in Germany, and offered to summarize it. He said he still had his doubts whether the evidence met "the test of the Supreme Court cases" but that "those doubts could be resolved."

Aside from the usual summer recess no substantial amount of time elapsed between May 18, when the court offered to assign a trial date, and September 20, when the government suggested a trial date in December. In my opinion the court should have adopted the government's suggestion, or else set an earlier trial date as some of the defendants suggested. Instead of doing either, the court permitted the defendants to file new motions to dismiss. Several defendants did so. The government's answer to these motions, filed on October 3, recited the fact that the government had suggested a trial date in December.

On November 21, 1946 the court held a hearing on the motions to dismiss. At this hearing Mr. Caudle, who had succeeded Mr. Rogge in charge of the government's case, informed the court that "the Government is ready for trial and it wants to insist that the cases be tried * * * We believe if a conviction is obtained in this case that it will be sustained. We are not in accord at all with the view that Mr. Rogge has taken as to what he contemplates the Supreme Court will do if the defendants are convicted." The court asked why the government had a different view from Mr. Rogge. Mr. Caudle said he would like to give the court a memorandum in writing on that question. Without in-

quiring how much time would be required, the court in effect declined the offer because it would cause delay. The court declined to examine the government's trial brief, and a report that Mr. Rogge had made to the Attorney General, because the government would not submit these documents to the defendants. On December 2 the court granted the motions to dismiss.

It is settled that "the constitutional guaranty of a speedy trial is a personal right which is waived by the accused's failure to demand trial." Collins et al. v. United States, 9 Cir., 1946, 157 F.2d 409, 410. Pietch v. U. S., 10 Cir., 110 F.2d 817, 129 A.L.R. 572, 587. Most of the defendants never demanded trial. Even the few who did were, I think, clearly outside the constitutional guaranty. For "the right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950; Bayless v. United States, 8 Cir., 1945, 147 F.2d 169. It is a right to be tried as soon as the interests of justice and the orderly conduct of the courts' business fairly permit. The fact that a trial was promptly commenced and carried on for seven months; the fact that it would have been completed, despite the death of the trial judge, if the defendants had consented; the difficulty of assigning counsel for the many defendants who had none, and the pendency in Congress of a bill to compensate counsel; the large number of other criminal cases awaiting trial; the rights of the defendants and of the government to have those cases tried, and the delay to which the trial of this case would subject many of them; and above all, the importance of the investigation in Germany which became possible some time after the end of the war, which might have produced evidence favorable to either side and did produce evidence favorable to the govern-

ment; all go to show, and taken together I think show conclusively, that no defendant's constitutional rights were denied.

It is said to have been within the court's discretion to dismiss the indictment under Rule 48(b) of the Federal Rules of Criminal Procedure which provides that "if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment." But the same facts which show that there was no denial of a "speedy trial" in the constitutional sense seem to me to show conclusively that there was no "unnecessary delay." Moreover I do not think this appeal presents the question whether it would have been within the court's discretion to dismiss the indictment on the theory of unnecessary delay. The question whether there was unnecessary delay did not turn upon the sufficiency of the government's evidence (except that the importance of getting evidence in Germany was one of the things that made delay necessary). No Rule of Criminal Procedure authorizes a court to dismiss an indictment before trial, over the government's objection, because the court thinks the evidence inadequate. It is even clearer if possible that a court is not authorized to dismiss an indictment, without considering the evidence, because a former prosecutor had doubts of its adequacy. Yet the court clearly indicated in a memorandum opinion that in dismissing this indictment it was very largely influenced not only by the delays which had occurred but likewise by the personal doubts of a successful prosecution which Mr. Rogge had expressed when he was in charge of the government's case. Dismissal because of those doubts was not, and would not have been even if the government had not repudiated them, an exercise of any discretion that may have been committed to the court. In my opinion the court exceeded its authority and its judgment should be reversed.