Elmer R. HAWKINS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15514.

United States Court of Appeals
District of Columbia Circuit.

Argued April 4, 1960.

Decided July 28, 1960.

Petition for Rehearing En Banc Denied
Sept. 16, 1960.

Mr. Kenneth C. Royall, New York City (appointed by the District Court) and Mr. George F. Bason, Jr., Washington, D. C., for appellant.

Mr. Donald S. Smith, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Mr. Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and WILBUR K. MILLER and BAZELON, Circuit Judges.

PER CURIAM.

Appellant was indicted, tried and convicted for narcotics violations.[1] The circumstances are that, upon the basis of a purchase of narcotics from a man named Hill, the police obtained a search warrant for certain premises. Executing the warrant, the police found our appellant, Hawkins, in a bathroom at the rear of the second floor. Narcotics parapher-

1. Int.Rev.Code of 1954, § 4704(a), 26 U.S.C.A. § 4704(a); and 21 U.S.C.A. § 174.

nalia were on the bathroom window sill. An envelope containing heroin was thrown out of a rear second-story window, apparently the bathroom window, at or about the time the officers made their entry. Hawkins was arrested and within the next few minutes signed his initials on the envelope containing the narcotics. Police officers testified that at the same time he confessed to the ownership of the narcotics; at the trial Hawkins denied this.

On this appeal Hawkins argues in his brief that the search warrant was invalid, because the affidavit upon which it was issued was insufficient; that the oral confessions should have been denied admission; that the evidence of the Government rebutted the statutory presumption arising from possession; that the court erred in permitting cross-examination of the defendant on the use of drugs; that the evidence was insufficient to corroborate his confessions; and that the evidence as a whole was insufficient to support the verdict. In addition to the points discussed in his brief appellant also urges that the punishments meted out to him are cruel and unusual and therefore invalid.

 We think the search warrant was valid. The affidavit filed in support of the application was in detail and recited facts sufficient to justify a prudent police officer and the magistrate in believing that narcotics and narcotics paraphernalia were on the premises named. Appellant says that he was coerced into putting his initials on the envelope and in his alleged oral confessions. This issue was put to the jury under proper instructions. The question of whether the narcotics in the envelope thrown from the bathroom window had or had not been in the possession of the defendant was a question of fact, the evidence as to which was at least sufficient to go to the jury

Hawkins argues that the Government's evidence rebuts the presumption flowing from possession.[2] His course of reasoning is that mere possession is not a crime; self-use of drugs is not a crime; possession is made a statutory presumption of purchase, sale or concealment; therefore, if the evidence shows the possession to have been for the purpose of self-use, the statutory presumption is rebutted. He fortifies his argument by the fact that the Government shows that at least two other occupants of the premises were drug users. He says that the evidence makes clear that he himself did use, instead of sell, any drugs coming into his possession, and that the free availability of drugs on the premises would make purchase unnecessary. One answer dispositive of this argument is that the Government did not rest its case upon the statutory presumption, but rather rested it upon the facts shown by the evidence concerning the envelope, the admissions by the defendant, and the incidents of the search and the arrest. Even if the statutory presumption be deemed to have been rebutted, the affirmative evidence remained. It is to be kept in mind that the indictment was for purchase and concealment as well as for sale.

 The argument in respect to cruel and unusual punishment rests in major part upon appellant's alleged possession solely for the purpose of personal use and the severity of the sentences required by the statute. He relies principally upon Petite v. United States,[3] but that case does not apply here. It dealt with multiple prosecutions, and the statement of policy by the Government, upon which the Court acted, included the premise "that several offenses arising out of a single transaction should be alleged and tried together".[4] The case at bar is not a multiple prosecution but involves several offenses arising out of the same or related transactions,[5] and they were al-

2. Supra note 1.

3. 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960).

4. Id., 361 U.S. at page 530, 80 S.Ct. at page 451.

5. See Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959).

leged and tried together in two counts of the same indictment.

Despite the earnest presentation by distinguished counsel, acting by appointment of the court, we find no error, and the judgment must be

Affirmed.

BAZELON, Circuit Judge.

I reluctantly concur in the result reached by the court.

For me this case is troubling in two respects: First, from all that appears in this record, appellant is nothing more than an unfortunate addict, with a "tragic dependency on drugs"[1] and no prior record of convictions—narcotics or otherwise. The statutory presumptions that make virtually every possessor of narcotics a "pusher,"[2] have caught appellant in a web of legislation, which is primarily designed to deter and punish professional peddlers and "traffickers" in narcotics.[3] Unfortunately, these statutes, which impose severe mandatory penalties that can neither be suspended nor diminished by probation or parole, are not calculated to provide "the medical and rehabilitative treatment" which Congress recognized as essential "to relieve [addicts] of their tragic dependency on drugs and to restore them to a constructive status in society."[4]

As Judge Edgerton has pointed out:

This legal situation troubles many judges. One writes: "I have found myself helpless in spite of my distaste for being the instrument in sending away for ten years a poor wretch who for the third time has been caught peddling a small amount of narcotics in order to avoid the horrible convulsions which seize the addict who does not meet the demands of his drug-accustomed body." Mr. James V. Bennett, Director of the United States Bureau of Prisons, writes: "I have attended a number of circuit conferences during the past year and * * * have talked to a number of Federal judges, and none of them have expressed to me anything but the sense of frustration they feel when they are confronted with the necessity of sentencing a narcotics violator."[5]

1. H.R.Rep. 2388, 84th Cong., 2d Sess. 54 (1956), quoted at note 3, infra.

 The Report points out that:

 "Drug addiction is not a disease but is a symptom of a mental or psychiatric disorder. * * * There are two groups of addicts. The first group is composed of persons who, after receiving repeated doses of narcotic drugs during a long and painful illness, become physically dependent upon the drug. * * * The second, and by far the larger group, is composed of those in whom drug addiction is a manifestation of some physical or mental abnormality." Ibid.

2. Possession "shall be deemed sufficient evidence to authorize conviction" for illegally importing narcotic drugs, or for buying, selling, or facilitating the concealment of illegally imported narcotics, knowing them to be illegally imported, "unless the defendant shall explain the possession to the satisfaction of the jury." 35 Stat. 614 (1909), as amended, 21 U.S.C.A. § 174. See Yee Hem v. United States, 1925, 268 U.S. 178, 45 S. Ct. 470, 69 L.Ed. 904.

 Possession of narcotic drugs without tax stamps is "prima facie evidence" of purchase, sale, or distribution of such drugs. Internal Revenue Code of 1954, § 4704(a). See Casey v. United States, 1928, 276 U.S. 413, 48 S.Ct. 373, 72 L. Ed. 632.

3. "Because contact with a drug is the essential prerequisite to addiction, the elimination of this contagious pestilence from our society *can be most effectively accomplished by striking at the illicit trafficker.* [The narcotic traffickers * * * are in most cases well organized professional racketeers * * *. Id. at 9.]

 "It is also important that addicts be deterred and be provided adequate medical and rehabilitative treatment so as to relieve them of their tragic dependency on drugs and to restore them to a constructive status in society." Id. at 54, emphasis supplied.

4. Ibid.

5. Statement of Circuit Judge Henry W. Edgerton on Sentences in Narcotics Cases, District of Columbia Circuit Institute on Sentencing, February 1960.

The second thing that troubles me about this case is that appellant's court-appointed counsel raises a number of points on this appeal which were not properly saved for review. And much of the evidence underlying some of these points was not sufficiently developed for us to say whether they involve plain error "affecting substantial rights" which we may notice under Rule 52(b), Fed.R. Crim.P., 18 U.S.C.A.

For example, appellant now complains that his oral admissions and incriminating behavior were coerced and should have been excluded under McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. He argues, in the alternative, that his admissions were submitted to the jury without adequate instructions concerning their voluntariness.

The police testified that appellant admitted purchasing the drugs the night before and throwing them out of the bathroom window when the police arrived. The Government also introduced into evidence an envelope containing narcotics which bore appellant's initials. Appellant testified that he was forced to initial the envelope through physical coercion, and that his admissions of purchase, if any, were also the product of police brutality.[6] He said that the officers took him off the toilet, stripped him naked and led him into another room. Shortly thereafter the officers led him, now clothed in his underwear, to another room where they hit him with their fists on his head, stomach and chest. Subsequently, they allegedly led him to the kitchen where they knocked his head against the wall until he agreed to initial the envelope containing narcotics. Appellant also claimed he sustained a bruise on his forehead and

that one of the officers at the police station observed this and asked if he were "a fighter?" His testimony was corroborated by a neighbor who testified that, from her back yard, she saw "two officers had him holding him up to the window holding his arms up," and that she heard appellant "yell," "Oh, don't hit me any more."

The officers denied that they struck or otherwise abused appellant. Since there is a conflict in the testimony, the Government contends that the issue of coercion was for the jury. Catoe v. United States, 1942, 76 U.S.App.D.C. 292, 131 F.2d 16. It also contends that we cannot reach the question of whether the admissions were involuntary as a matter of law since appellant's counsel did not object to their introduction into evidence.

Assuming we can reach this question, notwithstanding appellant's failure to object, I cannot say, in view of the conflicting testimony in the present record, that the admissions are involuntary as a matter of law. Wright v. United States, 1957, 102 U.S.App.D.C. 36, 45, 250 F.2d 4, 13.

But I am sadly constrained to note that, notwithstanding the substantial corroboration of appellant's testimony, neither the prosecution nor the defense sought to ventilate the issue of coercion by (1) inquiring whether appellant was ever informed of his right to remain silent and (2) calling witnesses who could either corroborate or discredit the evidence of coercion. There were approximately ten other persons in the house at the time of the arrest who would, presumably, have also heard appellant's loud protestations.[7] Similarly, there must have been persons available who could substantiate or rebut the testimony that appellant sustained a noticeable bruise

---

6. Although appellant "did not remember" telling the officers that he had purchased 50 capsules of heroin from a girl named Rose the day before, he testified that, "The only thing I told them they forced me to tell them." He explained this apparent inconsistency by saying, "I admit I got a little dizzy when they hit me, but I don't think I said anything." In any

event, a defendant does not waive the right to claim a confession is coerced because he denies making it. Lee v. State of Mississippi, 1948, 332 U.S. 742, 68 S. Ct. 300, 92 L.Ed. 330.

7. See Harris v. United States, D.C.Mun. App.1960, 162 A.2d 503 (a case growing out of the same police raid).

on his head. I am unable to understand why both the prosecution and the defense would leave such obvious stones unturned in an effort to convincingly rebut or buttress the appellant's corroborated version of police brutality.

Since we do not know what this evidence would have shown, we cannot reverse. But the seriousness of these omissions is demonstrated by Hamilton v. United States, 1944, 78 U.S.App.D.C. 316, 140 F.2d 679, 680. There appellant's conviction for soliciting for the purposes of prostitution rested "solely on the unsupported word of the arresting officer against the unsupported word of the appellant." We pointed out that, although "it is the kind of case in which a careful prosecutor should offer corroborating testimony if the record shows it to exist," neither side "nor the trial judge saw fit" to call readily available witnesses who "might have partially corroborated, or impeached, the arresting officer's version of the incident * * *." Appellant subsequently submitted affidavits from eye witnesses corroborating her version and requested a new trial on the grounds of newly discovered evidence. We reversed the trial court's denial of the motion.

Appellant also contends that, even if the evidence of coercion were for the jury, it was submitted under faulty instructions.

The trial judge properly charged the jury that "the Court doesn't admit in evidence any statement or any act which is the result of coercion." But when he elaborated this rule and applied it to the evidence, he only spoke of the defendant's act of initialing the envelope. He made no reference to the oral admissions. I cannot ignore the possibility that this may have misled the jury. It may have assumed that the voluntariness of the admissions was not in issue, and that appellant's incriminating statements were therefore voluntary as a matter of law. Thus the oral confession could have provided sufficient basis for conviction even if the jury found the initialed envelope involuntary and excluded it from consideration. Or, equally plausibly, the jury, believing the admissions to be voluntary as a matter of law, could have found the initialing also voluntary as a matter of fact, simply because it thought the circumstances underlying the admissions were much the same as those underlying the initialing.

But since appellant's counsel not only failed to request the trial court to instruct the jury on the issue of voluntariness of appellant's admissions but expressed satisfaction to the charge as delivered, the issue is beyond our reach. Fed.R.Crim.P. 30.