Sterling H. NICKENS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17735.

United States Court of Appeals
District of Columbia Circuit.

Argued July 12, 1963.

Decided Sept. 19, 1963.

Petition for Rehearing En Banc
Denied Oct. 29, 1963.

As Amended Nov. 19, 1963.

Mr. Isadore G. Alk, Washington, D. C. (appointed by this court), for appellant.

Mr. B. Michael Rauh, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Barry I. Fredericks, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge.

Appellant seeks review of his conviction for possession, sale and importation of narcotics in violation of 26 U.S.C. §§ 4704(a) and 4705(a) and 21 U.S.C. § 174. He was given concurrent sentences on the three counts. Appeal was allowed at government expense pursuant to Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The offenses which are the basis of appellant's conviction were committed on September 25, 1961. A complaint was filed and the arrest warrant was issued by the Commissioner on May 10, 1962. The arrest warrant was served on appellant the following day and on May 12 he was taken before a committing magistrate. On June 4, 1962, an indictment was returned and thereafter appellant entered a plea of not guilty. On appellant's motion he was committed on June 15, 1962, to St. Elizabeths Hospital for ninety days for psychiatric examination. On September 18, 1962, the Superintendent of the hospital reported to the court that appellant was competent to stand trial. The case was set for trial, but was continued on October 16 and November 7 because of court congestion. There

was a third continuance on November 15, 1962, because the United States Attorney was occupied trying a different case. On December 18, 1962, appellant moved to dismiss the indictment. This motion was denied. Trial was set for January 2 and was continued overnight to January 3 because a government witness was missing. On January 3 and 4 appellant was tried by a jury which was unable to reach a verdict. The second trial was held on February 14–18 and the jury returned a verdict of guilty as charged.

Four points are urged, two of which are closely related: first, the District Court abused its discretion in refusing to dismiss the indictment for lack of prosecution under Rule 48(b), Fed.R.Crim. P.; second, appellant was denied a speedy trial as guaranteed by the Sixth Amendment; third, the District Court abused its discretion by denying appellant's motion for a complete transcript of the first trial; fourth, the evidence establishes entrapment as a matter of law.

■ (1) Appellant's claim relating to the delay between the date of the offense and the commencement of criminal prosecution is not covered by Rule 48(b) of the Federal Rules of Criminal Procedure, Harlow v. United States, 301 F.2d 261, 266 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962); Hoopengarner v. United States, 270 F.2d 465, 469 (6th Cir. 1959); United States v. Hoffa, 205 F.Supp. 710, 720–721 (S.D. Fla.1962), or by the Sixth Amendment, but rather it relates to the running of the applicable statute of limitations. Harlow v. United States, supra; Foley v. United States, 290 F.2d 562, 565 (8th Cir. 1961); Venus v. United States, 287 F.2d 304, 307 (9th Cir.), rev'd with instructions to dismiss indictment on other grounds, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961); Hoopengarner v. United States, supra; Parker v. United States, 252 F.2d 680, 681 (6th Cir. 1958) (per curiam); D'Aquino v. United States, 192 F.2d 338, 350 (9th Cir.), cert. denied, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1951); Taylor v. United States, 99 U.S.App.D.C. 183, 186, 238 F.2d 259, 262 (1956) (dictum); Donnell v. United States, 229 F.2d 560, 567 (5th Cir. 1956) (Rives, J., dissenting); Note, 57 Colum.L.Rev. 846, 848 (1957);

Note, 64 Yale L.J. 1208 at n. 3 (1955). But see Mann v. United States, 113 U.S. App.D.C. 27, 29–30 n. 4, 304 F.2d 394, 396–397 n. 4, (dictum), cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); Note, Justice Overdue—Speedy Trial for the Potential Defendant, 5 Stan.L.Rev. 95 (1952); cf. Taylor v. United States, supra; Petition of Provoo, 17 F.R.D. 183, 203 (D.Md.), aff'd

mem. sub. nom., United States v. Provoo, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).[1] Appellant does not contend that this prosecution is barred by any statute of limitations.[2]

■■ (2) Appellant claims that the District Court abused its discretion in denying his motion to dismiss the indictment for lack of prosecution. Rule 48 (b), Fed.R.Crim.P., empowers the Dis-

1. The concurring opinion relies upon the Mann, Provoo, and Taylor cases for the proposition that the sixth amendment right to speedy trial protects against delays between the alleged offense and initiation of criminal proceedings. However, the cited footnote 4 in the Mann case, which Judge Wright also wrote, was obiter dictum in that case, and against the great weight of authority as set forth in text above. Further, as Judge Wright recognizes in footnote 1 of his concurring opinion, the courts in Provoo and Taylor did not base dismissal of the indictment on the "pre-arrest" or "pre-charge" delay but merely considered that period as a factor in aggravation of the delay between charge and trial. Indeed, this court took some pains in the Taylor case specifically to so note and caution: "We do not wish to be understood to do other than apply the rule stated [the right to speedy trial] to the facts and circumstances of this particular case." 99 U.S.App.D.C. at 186, 238 F.2d at 262. Nor can it fairly be asserted that the Supreme Court's memorandum affirmance in the Provoo case settled more than the law applicable to those particular facts; certainly, the courts in the five cases cited in text, which were decided subsequent to the Provoo case, did not regard the Supreme Court as having ruled contrary to their interpretations of the Sixth Amendment.

2. This is not to suggest that delay between offense and prosecution could not be so oppressive as to constitute a denial of due process. Cf. Petition of Provoo, supra 17 F.R.D. at 202 (citing Supreme Court cases finding denials of fourteenth amendment due process); United States v. McWilliams, 69 F.Supp. 812, 814 (D.D.C.1946) (semble alternative holding), aff'd, 82 U.S. App.D.C. 259, 163 F.2d 695 (1947); Note, The Right to a Speedy Trial, 57 Colum.L.Rev. 846, 860–63 (1957). Federal courts have long recognized that the sixth amendment guarantee of speedy trial is not directly applicable to the states nor incorporated

in full force by the Fourteenth Amendment; however, due process does protect the state defendant against denial of speedy trial after he has been officially charged. See Mattoon v. Rhay, 313 F.2d 683, 684–685 (9th Cir. 1963) (dictum); United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963) (dictum), affirming, 195 F.Supp. 432, 433–434 (S.D. N.Y.1961) (dictum); Odell v. Burke, 281 F.2d 782, 787 (7th Cir.) (dictum), cert. denied, 364 U.S. 875, 81 S.Ct. 119, 5 L.Ed. 2d 96 (1960); Hastings v. McLeod, 261 F.2d 627 (9th Cir. 1958) (per curiam) (dictum); Germany v. Hudspeth, 209 F. 2d 15, 18–19 (10th Cir.) (dictum), cert. denied, 347 U.S. 946, 74 S.Ct. 644, 98 L. Ed. 1094 (1956); In re Sawyer's Petition, 229 F.2d 805, 811–812 (7th Cir.) (dictum), affirming, 129 F.Supp. 687, 690–693 (D.Wis.1955) (dictum), cert. denied sub nom., Sawyer v. Wisconsin, 348 U.S. 855, 75 S.Ct. 80, 99 L.Ed. 674 (1956); New York v. Fay, 215 F.Supp. 653, 655 (S.D. N.Y.1963) (dictum); Gordon v. Overlade, 143 F.Supp. 577, 578 (D.Ind.1956) (dictum); cf. Suit v. Ellis, 282 F.2d 145, 148 (5th Cir. 1960) (dictum). The due process standard as applied in these cases was stated by the Court of Appeals for the Second Circuit in the Fay case: "To establish a violation of the due process clause [of the Fourteenth Amendment] appellant must prove that the delay precluded a fair determination of the charges against him." 313 F.2d at 623. Although it has not been directly decided, due process may be denied when a formal charge is delayed for an unreasonably oppressive and unjustifiable time after the offense to the prejudice of the accused; a fugitive or one who had concealed his wrongdoing could obviously not claim he was oppressed by delay. Regina v. Robbins, 1 Cox's C.C. 114 (Somerset Winter Assizes 1844), is an example of an English court applying a standard of fundamental fairness when charges were not preferred for more than two years.

trict Court to dismiss a criminal prosecution "if there is unnecessary delay in presenting the charge to a grand jury." See Mann v. United States, 113 U.S.App. D.C. 27, 304 F.2d 394 (1962). A motion to dismiss under Rule 48(b) is addressed to the sound discretion of the trial court, and when such motion is granted, that action will be sustained unless the trial court is shown to have acted in an arbitrary and clearly unreasonable manner. United States v. McWilliams, 82 U.S.App. D.C. 259, 163 F.2d 695 (1947). The record does not show an abuse of discretion.

■ (3) Appellant's claim that he was denied a speedy trial as guaranteed by the Sixth Amendment is not supported by the record. Nine months elapsed between appellant's arrest and the culmination of his second trial in a verdict of guilty. However, a substantial portion of this time lapse is explained by appellant's 90 day commitment to St. Elizabeths Hospital for pretrial mental examination and the proceedings incidental to his motion for this examination. The balance of the time—which was consumed by a trial ending with a "hung" jury and continuances because of calendar congestion, engagement of the United States Attorney in another trial, and absence of a government witness—did not constitute such delay as would warrant dismissal of the indictment for want of a speedy trial. King v. United States, 105 U.S.App.D.C. 193, 265 F.2d 567 (1959), cert. denied, 359 U.S. 998, 79 S.Ct. 1124, 3 L.Ed.2d 986; Turberville v. United States, 112 U.S. App.D.C. 400, 303 F.2d 411 (1962), cert. denied, 370 U.S. 946, 82 S.Ct. 1607, 8 L.Ed.2d 813; Harlow v. United States, supra. See Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Stevenson v. United States, 107 U.S.App.D.C. 398, 278 F.2d 278 (1960). Appellant's contention cannot be sustained.

■ (4) Prior to the second trial, appellant moved the court for a complete transcript of the first trial at the expense of the government. This motion was denied. The government does not contend that the District Court lacked the power to order the requested transcript but rather that appellant made no showing of need. See 28 U.S.C. §§ 753(f), 1915. Compare Whitt v. United States, 104 U.S. App.D.C. 1, 259 F.2d 158 (1958). There is no absolute right to have the transcript of a prior trial against the contingency, now urged, that some witness at the second trial may give inconsistent testimony. Any inconsistency in testimony arising at the second trial could readily be dealt with by calling the reporter of the prior trial to read the earlier testimony. Appellant had the same counsel at both trials. The District Court did not abuse its discretion in denying appellant's bare demand for a transcript in these circumstances.

■ (5) The claim that entrapment was shown as a matter of law is similarly lacking in merit. Undisputed testimony, which was deemed credible by the jury, shows that the first effort to purchase narcotics from appellant failed because appellant said he had none on hand at the time but would have a supply later. At a later date, appellant indicated his capacity for "ready compliance" by signalling government agents when he saw them and offering to sell $60 worth of capsules. The appellant's desire, ability and complete readiness to traffic in narcotics then in his possession is thus undisputed. Nevertheless the District Court, apparently in an abundance of caution, submitted the issue of entrapment to the jury and their verdict plainly rejects the claim. The contention that the record shows entrapment as a matter of law is legally frivolous. This record discloses nothing remotely resembling sales produced by "the creative activity" of the government or "manufactured" by them. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Fletcher v. United States, 111 U.S.App.D.C. 192, 295 F.2d 179 (1961),

cert. denied, 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530.

The judgment of the District Court is

Affirmed.

WRIGHT, Circuit Judge (concurring in the result).

The central issue in this case concerns the purposeful delay by the Government in initiating the prosecution of the appellant. According to the Government's evidence, appellant made an illegal sale of narcotics to a federal narcotics agent on September 25, 1961, in the presence of an informant who had arranged the sale. About two days later the officer tried, but failed, to make a second purchase. At this point the Government's case against appellant was complete. There was no further attempt to contact him and no additional evidence was needed. Yet the signing of a complaint, the issuance of a warrant of arrest, and the arrest itself were delayed until May 10–11, 1962, approximately seven and a half months later. At trial, the court noted that this delay raised the question of denial of the speedy trial guaranteed by the Sixth Amendment. The court directed the Government to bring out "whether there was any basis for waiting eight months to file a complaint."

In Pollard v. United States, 352 U.S. 354, 361–362, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), the Supreme Court not only equated "purposeful" delays with the "oppressive" ones forbidden by the Sixth Amendment, but also interpreted United States v. Provoo, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955), affirming mem. Petition of Provoo, D.Md., 17 F.R. D. 183 (1955), as condemning delay "caused by the deliberate act of the government." In the case before us, where

the delay was caused by acts of the Government which were both "purposeful" and "deliberate," careful scrutiny is demanded by the exacting mandate of the Sixth Amendment.

## I.

Delay in bringing a complaint may violate Sixth Amendment rights. This court, without dissent, said only last year: "[T]he constitutional guarantee protects against undue delays in presenting the formal charge as well as delays between indictment and trial. The Supreme Court's affirmance of Judge Thomsen's ruling in Provoo, infra, seems to have settled the point. See also our opinion in Taylor, infra. In a non-capital case, it is true, mere delay in presenting the charge will rarely work a deprivation of the constitutional right, for permissible time in that instance is normally governed by the statute of limitations. Yet, if the delay is 'purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393, even an indictment within the limitation period may come too late to square with the Sixth Amendment." Mann v. United States, 113 U.S.App.D.C. 27, 29–30, n. 4, 304 F.2d 394, 396–397, n. 4 (1962), cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). See United States v. Provoo, supra; Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259 (1956).[1] That the delay in doing justice in this case occurred between offense and formal complaint, rather than between complaint and indictment[2] or indictment and trial,[3] does not immunize it from the constitutional command. The right of a suspect to speedy determination of guilt or innocence is not lost merely because the delay in the process occurs before the formal charge, rather than after.[4] Mann v. United States, supra.

1. In Provoo, as in Taylor, delay before trial was one of the combination of factors which, in sum, effected a denial of the right of speedy trial. The importance of this factor to our decision in Taylor was emphasized in James v. United States, 104 U.S.App.D.C. 263, 261 F.2d

381 (1958), cert. denied, 359 U.S. 930, 79 S.Ct. 613, 3 L.Ed.2d 631 (1959).

2. Compare Rule 48(b), F.R.Crim.P.

3. Ibid.

4. Some courts have held a complaint and indictment may be delayed with impunity,

Indeed, a suspect may be at a special disadvantage when complaint or indictment, or arrest, is purposefully delayed. With no knowledge that criminal charges are to be brought against him, an innocent man has no reason to fix in his memory the happenings on the day of the alleged crime. Memory grows dim with the passage of time. Witnesses disappear. With each day, the accused becomes less able to make out his defense.[5] If, during the delay, the. Government's case is already in its hands, the balance of advantage shifts more in favor of the Government the more the Government lags. Under our constitutional system such a tactic is not available to police and prosecutors.

## II.

This case involves a drug addict. Narcotics addiction poses a serious problem for society,[6] but the solutions at times attempted raise other dangers.[7] As Mr. Justice Roberts observed, "The efforts * * * to obtain arrests and convictions have too often been marked by reprehensible methods,"[8] methods which he termed a "prostitution of the criminal law."[9] Since addicts ordinarily become known to the police in the course of repeated offenses, the addict on the street lives always in fear of arrest at the discretion of the police. Since the addict is continually in possession of narcotics, proof of a new offense is easily come by. As here, it is the practice for the police

without regard to the right to speedy trial, because the time of indictment is governed by the statute of limitations. See cases mentioned in Mann v. United States, supra. But the constituional right cannot depend upon the terms of a statute. As an act of legislature, the period of limitations may be extended. See Act of September 1, 1954, c. 1214, § 12(a) (formerly § 10(a)), 68 Stat. 1145. The period may be done away with. Compare 18 U.S.C. § 3281 (1951). The period may be made to run from the time the offense becomes known to the authorities until the time of indictment, or from the time of indictment until the time of trial, or from the actual time of the offense until the time of trial. *Compare* LSA–R.S. 15:8 (1951) *with* La.Act No. 25 of 1960. The legislature is free to implement the constitutional right and to provide protections greater than the constitutional right. But the minimum right of the accused to a speedy trial is preserved by the command of the Sixth Amendment, whatever the terms of the statute. And that minimum right is measured by a flexible standard which takes account of all the circumstances. See Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L. Ed. 950 (1905).

5. See Taylor v. United States, supra, 99 U.S.App.D.C. at 186, 238 F.2d at 262.

6. It is now "overwhelmingly accepted" that "addiction is the manifestation of disease and not in itself a crime." Statement of Senator Jacob K. Javits, Proceedings, White House Conference on Narcotic and Drug Abuse, p. 71

(1962). See H.R.Rep. No. 2388, 84th Cong., 2d Sess., pp. 8, 54, reprinted in U.S.Code Cong. & Adm.News, 84th Cong., 2d Sess., pp. 3281, 3293; Robinson v. California, 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Linder v. United States, 268 U.S. 5, 18, 45 S.Ct. 446, 69 L.Ed. 819 (1925). An enlightened approach to the problem of narcotics addiction turns toward medical and social, rather than penal, solutions. See Representative Emanuel Celler, Chairman, House Committee on the Judiciary, An Alternative Proposal for Dealing with Drug Addiction, 27 Fed.Prob. (No. 2) 24 (June, 1963); Statement of Judge Morris Ploscowe, Proceedings, supra, pp. 95–96; Statement of Judge John W. McIlvaine, id., pp. 188–191; Statement of Senator Thomas J. Dodd, id., pp. 228, 232; compare Linder v. United States, supra.

7. See Trent v. United States, 109 U.S.App. D.C 152, 156, 284 F.2d 286, 290 (1960) (dissenting opinion of Judge Bazelon), cert. denied, 365 U.S. 889, 81 S.Ct. 1035, 6 L.Ed.2d 199 (1961), rehearing denied, 366 U.S. 978, 81 S.Ct. 1928, 6 L.Ed.2d 1263 (1961); Hawkins v. United States, 109 U.S.App.D.C. 338, 340, 288 F.2d 122, 124 (1960) (concurring opinion of Judge Bazelon).

8. Sorrells v. United States, 287 U.S. 435, 453, 53 S.Ct. 210, 216–217, 77 L.Ed. 413 (1932) (separate opinion of Mr. Justice Roberts, Mr. Justice Brandeis and Mr. Justice Stone concurring).

9. Id. 287 U.S. at 457, 53 S.Ct. at 218, 77 L.Ed. 413.

themselves to arrange for a sale to be made. The arrangements are often made through some informant, an addict himself, who is working his peace with the police by entrapping fellow addicts. In this way narcotic arrests, as distinguished from arrests for other offenses, are shaped by the police, at a time of their choice, against a suspect of their choice, before witnesses of their choice. Thus, the Government has almost total control of the evidentiary situation.

Total control of the evidentiary situation by the Government, of course, makes for an airtight case. But when delay in prosecution intervenes, this airtight trap may blindly close on the wrong man. Error becomes more possible with each passing day, and a person caught by mistake in this airtight trap may indeed be helpless. The danger of grave injustice is magnified in a case such as this where the identification is predicated on a single sale, and where, as is customary, the Government uses an addict as its informant. Since the possibility of abuse of the Government's control over the evidence exists, the court must remain vigilant to scrutinize delay, for "[t]he preservation of the purity of its own temple belongs only to the court." [10]

### III.

In some types of criminal prosecution, of course, delays before complaint will often be unobjectionable. When involved investigation, difficult prosecutory decisions, or complex preparations for the grand jury are necessary, the delay may be warranted. When the authorities are unsure against whom to proceed, or doubtful of the adequacy of the case, then, of course, no formal charges should be brought. But when there is no such necessity, there should be no delay. In this case, where the testimony of an officer and an informant was in hand and nothing more remained to be done but the signing of a formal charge, the delay of seven and a half months before that step is a circumstance demanding explanation.

The trial court here quite properly put the burden on the Government to justify the delay. The Government must show that "there was no more delay than is reasonably attributable to the ordinary processes of justice." Williams v. United States, 102 U.S.App.D.C. 51, 53, 250 F.2d 19, 21 (1957) (opinion of Judge Bazelon). The explanation offered at trial for not making an immediate arrest at the time of the illegal transaction was the desire of the narcotics agent to effect a second transaction a few days later. But when the attempt at such a second sale was unsuccessful, still no charge was made. The Government explains the continued delay by the need not to expose the undercover identity of the agent, who continued at work in the Washington area attempting to secure evidence against others. But it does not appear that the agent continued this undercover work until the date of the complaint eight months later, for, at some time in this period, he left Washington to do similar work in New York. Moreover, in March he exposed his role here by signing complaints against other addicts. Still no complaint was made against appellant until May. At least this final delay of two months seems longer than "reasonably attributable to the ordinary processes of justice." In the circumstances of this case, however, it may be proper to defer to the determination of the trial court on this question.

### IV.

A showing of prejudice is not required when a criminal defendant is asserting a constitutional right under the Sixth Amendment. Taylor v. United States, supra; Petition of Provoo, supra, at 203; United States v. Lustman, 2 Cir., 258 F.2d 475 (1958), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). On the contrary, the Government bears the burden of proving "that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." Williams v. United

10. Ibid.

States, supra, 102 U.S.App.D.C. at 53, 250 F.2d at 21.

In the case at hand, the appellant admits meeting the narcotics officer on the day in question, with no one else present other than the informant. There was no evidence of missing witnesses, or alibi, or lapse of memory, or other circumstances which could have prejudiced the appellant. *Where the suspect was at all times at liberty during the delay,* the Government's additional affirmative showing that delay could not have been prejudicial was properly considered by the trial court in determining whether or not the delay was so undue as to violate constitutional rights. See Williams v. United States, supra; Taylor v. United States, supra, 99 U.S.App.D.C. at 186, 238 F.2d at 262.

## V.

Appellant's other contentions deserve mention. Prior to second trial, appellant's motion for a transcript of the first trial at the expense of the Government was denied. It appears that appellant at that time made no attempt to show his need for the transcript. In the course of the second trial, defense counsel attempted through questioning to develop inconsistencies between testimony then given and testimony which he remembered as being given at the first trial, wherein he had also been counsel. When the trial court erroneously sustained an objection to one such question, counsel made no renewal of his motion for a transcript, on which to base this line of questioning. Of course, if he had made such a motion, it would have been proper to grant it. A free transcript of a first trial may be required for effective defense in a second trial. Compare Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Whitt v. United States, 104 U.S.App.D.C. 1, 259 F.2d 158 (1958), cert. denied, 359 U.S. 937, 79 S.Ct. 652, 3 L.Ed.2d 637 (1959). But, under the circumstances here, the failure to order a transcript does not appear to be reversible error.

## VI.

Appellant also suggests that the evidence showed entrapment as a matter of law. It did not, though it did raise the question of entrapment for the fact finder to decide.[11]

The law on entrapment in this Circuit has been clearly stated.[12] When the evidence shows that a Government agent or intermediary has induced the commission of an offense, the issue of entrapment is raised for decision[13] and, as was pointed out by Judge Burger, speaking for this court in Trent v. United States, supra, Note 7, 109 U.S.App.D.C. at 154, n. 2, 284 F.2d at 288, n. 2, a "sale to an officer or police agent is *always* one induced by the purchaser."[14]

11. It may be noted that "[w]hether in the absence of a conclusive showing the defense [of entrapment] is for the court or the jury, and whether the controlling standard looks only to the conduct of the Governemnt, or also takes into account the predisposition of the defendant," are questions apparently still open. Lopez v. United States, 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963) (by implication); see Sorrells v. United States, supra, Note 8, at 287 U.S. 453, 53 S.Ct. at 216–217, 77 L.Ed. 413 (separate opinion of Mr. Justice Roberts, Justices Brandeis and Stone concurring); Sherman v. United States, 356 U.S. 369, 378, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (separate opinion of Mr. Justice Frankfurter, Justices Douglas, Harlan and Brennan concurring).

12. Johnson v. United States, 115 U.S.App. D.C. 63, 317 F.2d 127, 129 (1963); Hansford v. United States, 112 U.S.App. D.C. 359, 303 F.2d 219 (1962); see United States v. Sherman, 2 Cir., 200 F.2d 880 (1952) (per Judge Learned Hand).

13. Ibid.; Sorrells v. United States, supra, Note 8; Sherman v. United States, supra, Note 11.

14. Mr. Justice Frankfurter has also observed: "Of course in every case of this kind the intention that the particular crime be committed originates with the police, and without their inducement the crime would not have occurred." Sherman v. United States, supra, Note 11, 356 U.S. at 382, 78 S.Ct. at 825–826, 2 L. Ed.2d 848.

In Johnson v. United States, supra, Note 12, Judge Bastian, dissenting, stated

It is open to the Government, however, to prove beyond a reasonable doubt that the accused was "ready and willing without persuasion * * * awaiting any propitious opportunity to commit the offense." [15] United States v. Sherman, supra, Note 12, 200 F.2d at 882. Indeed, the Government might be able to show that the accused was committing the crime at the very moment he was first approached by the agent. This would be true if he then possessed illegal narcotics, which were sold to the officer on the spot. In such a case, the sale, but not the possession, might be a product of entrapment and an instruction on entrapment would be required as to it. Since an entrapment charge was given here and the question of ready willingness was an open one, the jury's resolution of the issue is determinative.[16]

For these reasons, I concur in the result reached by my brothers.

that the issue of entrapment was not raised because there was "no evidence of inducement of appellant except the use of police money." 115 U.S.App.D.C. at 67, 317 F.2d at 131. The majority, however, held that such circumstances were sufficient to require that the jury be instructed on entrapment. 115 U.S. App.D.C. at 64, 317 F.2d at 128. See also Hansford v. United States, supra, Note 12, 112 U.S.App.D.C. at 304, 303 F.2d at 224.

15. But see Note 11, supra.

16. Ibid.