See also, D.C., 36 F.R.D. 431.

**UNITED STATES of America,
Plaintiff,**

v.

**John A. MACKEY, Defendant.
Cr. No. 556–63.**

United States District Court
District of Columbia.
March 5, 1965.

Harold H. Titus, Asst. U. S. Atty., Washington, D. C., for the Government.

William F. McGraw, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This hearing has been held in compliance with an order of the Court of Appeals made by Judge Edgerton and Judge Washington, Judge Bastian not participating, on November 19, 1964. That

order contains, in part, the following recitals:

"It appears to the Court that the record before us is inadequate to permit proper review by this Court of the reasonableness *vel non* of the delay occurring between the alleged offense by appellant and the appellant's arrest thereof and its effect, if any, on the defense of the case, and whether there was a denial of the appellant's right to a speedy trial. It further appears to the Court that the record should be remanded so that the District Court may supplement it by holding a hearing on the subject of the aforesaid delay and its effect, if any, and make findings of fact and reaching conclusions of law thereon."

The Court has heard testimony introduced by counsel for the defendant and makes the following findings of fact and conclusions of law in response to the order of the Court of Appeals.

No evidence was offered in behalf of the defendant showing that any prejudice accrued to him because of the alleged delay, if any. Able counsel for the defendant candidly stated that the defendant did not desire to take the witness stand and to testify, and apparently no other evidence of any alleged prejudice was available.

The Court further finds that the defendant was arrested and indicted as a result of an undercover investigation conducted by the Narcotics Squad of the Metropolitan Police Department of Washington, D. C., beginning on July 22, 1962, and ending on March 15, 1963. At the close of the investigation, warrants were issued for over one hundred defendants against whom evidence had been procured as a result of the investigation of violations of the narcotics laws. A warrant for the defendant's arrest was issued on March 15, 1963. He was arrested on April 9, 1963. In the intervening three weeks or so, diligent efforts were being made to locate him, but these efforts did not succeed until April 9th.

It further appeared from the evidence introduced at this hearing that it was the practice of the Narcotics Squad, in conducting investigations of sales of narcotics, to make more than one purchase, if it was feasible to do so, from the same defendant, both for the purpose of establishing a pattern of activity on the part of the prospective defendant, as well as to make the identification of the person doubly sure. It also appeared that one of the purposes of such an investigation is to get at the source from which the sellers of narcotics obtain their supply, because effective suppression of the drug traffic would be helped by getting at the wholesale source of the material. It was because of these considerations that a number of purchases of narcotics were made from the defendant by an officer working in an undercover capacity, as alleged in the indictment and as found by the Court at the trial, to wit, on October 23, 1962, on December 12, 1962, January 10, 1963, February 4, 1963, and February 5, 1963.

The Court concludes that there was no unreasonable delay between February 5, 1963, the date of the last purchase, and March 15, 1963, when the warrant was obtained; and, further, that it was reasonable for the Government not to obtain any warrant while they were making purchases from the defendant at periodic intervals in order to determine what his activities were and endeavor to ascertain what his contacts and connections in the trade were. The Court also concludes that no proof has been introduced of any prejudice accruing to the defendant as a result of the intervals to which reference has been made and which the Court finds were not unreasonable under the circumstances.

The Court having made these findings of fact and conclusions of law will make the following additional comments. Good law enforcement frequently requires law enforcement officers not to make spot arrests or break a case, to use the parlance of the profession, too soon. It is, of course, different with a crime of violence such as robbery, murder, burglary or

housebreaking. There the sooner the offender is caught, the better. But there are types of crimes of an insidious character where it is necessary to maintain a long surveillance over the participants not only in order to secure evidence as to the specific individuals, but also, and what is more important, to try to ascertain the pattern of their activities, their contacts, their associates, and in case of narcotics, the source of their supply. The true ends of law enforcement would frequently be defeated by premature arrests. This course is a recognized and proper practice of experienced and successful law enforcement officers. For example, it is frequently followed in mail fraud cases, in cases involving national security, narcotics cases, cases of unlawful sales of securities, and so on. Long range suppression of crime frequently requires a surveillance over a period of time in respect to numerous individuals in order to be able to apprehend an entire group or put a stop to activities at the source. Consequently, the law enforcement officers in this case acted in accordance with the best strategy and requirements of good law enforcement.

The Court wishes to add the following comment in closing. In compliance with the order of remand the Court has conducted this hearing. The Court gave an opportunity to able counsel for the defendant to offer any relevant and competent evidence on the issues and has heard all the evidence that he has introduced and made the foregoing findings of fact and conclusions of law. The Court, nevertheless, wishes to repeat, as is stated in its opinion of January 15, 1965, 36 F.R.D. 431, that very likely the order of remand was made without regard to the rule of law laid down by the Court of Appeals itself that the interval between the date of the commission of the offense and the date of the commencement of the criminal prosecution is not covered either by Rule 48(b) of the Federal Rules of Criminal Procedure or by the provision of the Sixth Amendment relating to speedy trials, but relates purely to the running of the applicable statute of limitations. The Court of Appeals so held in Nickens v. United States, 116 U.S. App.D.C. 338, 339, 323 F.2d 808. Manifestly, only the Court of Appeals *en banc* or the Supreme Court may overrule this decision. It may be added that all of the Circuits have the same rule.